# LUCAS *vs.* OLIVER.

[BILL IN EQUITY FOR REDEMPTION OF MORTGAGED PROPERTY.]

1. *Sufficiency of averments of bill.*—An averment that the complainant "is informed and believes" that a certain material fact exists, is not equivalent to an averment of the existence of that fact; but an averment of the existence of the fact, "as complainant is informed and believes," is sufficient.

2. *Alternative averments.*—Where the equity of a bill rests on the existence of one of two facts, which are stated disjunctively, and one of which is not sufficient to uphold the bill, the averment is insufficient.

3. *When mortgage sale will be set aside in equity, on account of trustee's misconduct.* The fact that a trustee, in making a sale of property under a mortgage or deed of trust, knew that the purchaser was bidding for the mortgagee, is not sufficient to induce a court of equity to set aside the sale.

APPEAL from the Chancery Court of Macon.

Heard before the Hon. JAMES B. CLARK.

THE bill in this case was filed, on the 18th December, 1852, by Joseph S. Oliver and others, children and heirs-at-law of Whiting Oliver, deceased, against Henry Lucas and James H. Judkins. Its object was to set aside a mortgage sale of a tract of land, and let in the complainants to redeem. The mortgage was executed by said Whiting Oliver, on the 11th September, 1848, to secure said Henry Lucas against his accommodation acceptance of a bill of exchange for $2,161, drawn by said Oliver on the 12th June, 1848, and payable six months after date; conveyed to James H. Judkins a tract of land containing 320 acres, together with six negroes, the crop of cotton and corn then growing on the land, and all the cattle, sheep and hogs; and authorized him to take possession, on default being made in the payment of the bill at maturity, and to sell so much of the property as might be necessary to pay off the bill, with all incidental costs and charges. The bill of exchange having been paid at maturity by Lucas, in default of payment by Oliver, Judkins took possession of the land and other property, and

sold the same at public outcry on the first Monday in January, 1849, when the land, cotton and corn were knocked down to Thomas Judkins, as the highest bidder, and the cattle, sheep and hogs to one Thomas C. Cliatt. The grounds on which the validity of the sale was attacked by the complainant, were, that Thomas Judkins, in becoming the purchaser, was acting merely as the agent of Henry Lucas; that there was a combination and agreement between said Lucas, Cliatt and Thomas Judkins, prior to the sale, that they should not bid against each other; that in consequence of this agreement, and of the further fact that the property was sold in the city of Montgomery, instead of on the plantation, the prices realized at the sale were greatly below the real value of the property; and that James. H. Judkins was privy to this arrangement.

Some of the averments of the bill were made on information and belief, and others simply alleged the complainants' information and belief, as is shown in the following extracts: "They further show, that in bidding for said lands, corn and cotton, they are informed and believe that Thomas Judkins was acting, not for himself, but for said Henry Lucas; and that said Lucas was, in truth and in fact, the purchaser of said lands, corn and cotton, if there was a valid sale thereof." "They further show, that before the said pretended sale by James H. Judkins, the said Lucas, James H. Judkins and Thomas Cliatt, or some two of them, as they are informed and believe, made some arrangement, by which it was agreed and understood that said Cliatt might bid for said cattle, hogs and sheep, and that said Lucas would not bid against him, nor interfere with his getting them at whatever he might bid; and that said Cliatt became the purchaser, under this agreement, of said cattle, sheep and hogs, as aforesaid." "They further show that, as they are informed and believe, under the same agreement and understanding between said Lucas, Cliatt and Judkins, or some other person, to all of which said Lucas was a party, either in person, or through his agent, James H. Judkins, the said Cliatt was not to bid against Lucas, or

whomsoever was bidding for him, for said lands, corn and cotton; and that by this means, and under this understanding, said Lucas, through said Thomas Judkins, became the purchaser of said lands, corn and cotton, if there was in fact any sale, and bought the same for such a low price." "They further show that, at the time said deed was executed, and for a long time before, and ever since, as they are informed, said James H. Judkins was and is the agent of said Lucas, and transacts almost all his business," &c. &c.

The defendants filed separate answers, denying all the charges of fraud, and insisting on the fairness and regularity of the sale; and incorporated in their answers demurrers to the bill for want of equity.

On final hearing, on pleadings and proof, the chancellor rendered a decree for the complainants, setting aside the sale of the land, ordering an account, &c.; and his decree is here assigned as error.

H. W. Hilliard, for the appellant.

Elmore & Yancey, with Wm. P. Chilton, contra.

STONE, J.—It is objected for appellants, that the averments of the bill in this case are not sufficient. The authorities cited in support of this position are, Jones v. Cowles, 26 Ala. 614; Charles v. Dubose, 29 Ala. 367, and Read v. Walker, 18 Ala. 332. The language of the bill, in Jones v. Cowles, was, "Your orator further saith, that he is advised and believes that, before the said contract of purchase was consummated, the said Thomas M. Cowles," &c. This was not an averment of any matter as *a fact*, but only that the complainant had received certain advice or information, and believed that information to be true. In other words, he averred his confidence in the truth of the information, which he said he had received. The defendant could have formed a literal issue upon this averment, if he had denied that the complainant had been so *advised*, or had denied that he *believed* the information. In the case of Charles v. Dubose, the bill not only failed to aver a sale, but denied that any

had been made. The case of Read v. Walker decides nothing that can benefit the present appellant.

In the present record, the material averments are stated as facts, with the additional words, " as your orator and oratrixes are informed and believe." This is more than an averment of complainants' confidence in the truth of the representations. It avers the facts, and states the source from which the knowledge of those facts was derived. There is nothing in this objection.

The proof in this record fails to establish the averment, that there was any combination, agreement or understanding between Mr. Lucas, or James H., or W. T. Judkins, and any other person, to prevent or embarrass fair competition in the bidding at the sale. We dismiss, then, as unsustained by the testimony, all charges of actual fraud in the sale.

The witness W. T. (or Thomas) Judkins does prove that, at the sale, he, as the agent of Henry Lucas, the beneficiary, bid for and purchased, for Mr. Lucas, the land, the cotton, and the corn; and that, on the day and before the sale, James H. Judkins, the trustee, informed him, W. T. Judkins, that Mr. Lucas desired him to bid for the property for him, Lucas, and to make the land bring $5 per acre. It is here insisted that this agency on the part of James H. Judkins, the trustee, was incompatible with that strict neutrality which the law required at his hands; and that this, without more, arms the heirs-at-law of Whiting Oliver with the right to have the sale set aside. The strongest authorities in support of this proposition are the following: Bennett, *Ex parte,* 10 Vesey, 381; Utica Ins. Co. v. Toledo Ins. Co., 17 Barb. Sup. Ct. 132; 1 White & Tudor's Leading Cases, 160 to 169; Michaud v. Girard, 4 How. (U. S.) 503, 535; Hawley v. Cramer, 4 Cow. 717; Scott v. Freeland, 7 S. & M. 409; Davone v. Fanning, 2 Johns. Ch. 252; McLeod v. McCall, 3 Jones' Law, 87; Lawrence v. Hand, 23 Miss. 103; Beeson v. Beeson, 9 Penn. State Rep. 279; Andrews v. Hobson, 23 Ala. 219; Charles v. Dubose, 29 Ala. 369.

A question arises, however, on the pleadings in this case, which we feel it our duty first to consider.

In Cressett v. Mitton, 1 Vesey, jr. 449, the bill was filed to perpetuate a right of common and of way. The charge in the bill was, that the tenants, owners and occupiers of certain lands in a manor, *in right thereof or otherwise,* from time whereof the memory of man is not to the contrary, had, and of right ought to have, common of pasture, &c. The bill was held bad on demurrer, because of the words "*or otherwise.*" It did not aver that the right of common was *appendant* or *appertenant,* but that it was *that or otherwise.* The court said, this was no specification at all, but left the matter open to any sort of proof. The court added, there must be something substantial; the party must claim something.—See S. C., 3 Bro. C. C. 481; see also, to the same effect, Ryves v. Ryves, 3 Vesey, 343; Wormald v. De Lisle, 3 Beavan, 18; Jerome v. Jerome, 5 Conn. 352; Story's Eq. Pl. §§ 244, 244 *a,* 245, 305; Gill v. Haywood, 1 Vern. 312.

In 1 Danl. Ch. Pr. 377, it is said, "care must be taken, in framing the bill, that everything which is intended to be proved, be stated upon the face of it. Otherwise, evidence cannot be admitted to prove it."

The only averment in the present bill, which bears on the question we are considering, is as follows: "And they (orator and oratrixes) also believe, and so charge, that the said James H. Judkins procured or got the said Thomas Judkins to bid for said land, cotton and corn, at the pretended sale, *or* that he at all events knew, and it was understood between him and Henry Lucas, or Thomas Judkins, that Thomas Judkins was to bid for said property for said Lucas; and that, throughout the whole transaction, the said James H. Judkins acted, not as a trustee for all parties, and taking care of the interest of all, but in part alone as the trustee and agent of Lucas alone, and with a special eye to the interest of Lucas; and his conduct in this behalf, and in the business, has been a fraud upon your orators."

It is, perhaps, needless to say that the concluding part of the above extract, commencing with the words, "and that throughout the whole transaction," &c., contains no substantive averment of fact, or abuse of trust or confi-

dence, on which equity could or would grant relief. It is a mere general statement of a conclusion, omitting all mention of particulars.

The averment, then, reduces itself to an alternate statement of one thing or another; viz., that James H. Judkins, the trustee, procured Thomas Judkins to bid for the property, *or* that he, James H., knew that Thomas Judkins was to bid for the property for Lucas. Even this last alternative averment is made disjunctively—viz., that he, James H., knew, and it was understood between him and Henry Lucas, *or* between him and Thomas Judkins, that the said Thomas was to bid for said property for said Lucas.

Without intending, in this opinion, to commit ourselves on the question, whether, in such case as this, it is sufficient to aver alternatively that the wrong or fraud complained of was perpetrated either by one instrumentality or another, it is manifest, that if such form of pleading be resorted to, under the rule which requires the pleader to show by his pleadings that he has a right to the relief he prays, and which forbids us to presume in favor of the bill the existence of material facts not averred, no relief can be granted, unless each branch of the disjunctive averment set forth a ground for equitable interposition. The last branch of this averment, namely, that James H. Judkins, at the time of the sale, knew that Thomas Judkins was bidding as the agent of Henry Lucas, certainly offers no sufficient reason for setting aside the sale. Indeed, the complainant does not contend for such a proposition.

It will be observed, that the second alternative averment of the bill is, that the trustee knew, and it was understood between him and Henry Lucas, or Thomas Judkins," &c. It may be contended, that the word *understood* amounts to a charge that the trustee participated actively in the arrangement under which Thomas Judkins made the purchase. In the various definitions given by lexicographers to the verb *to understand*, none of them implies a contract or agreement. Understanding is a mental operation, and does not require either word or

action in the person possessing it to render it complete. A full and complete denial of this charge may be made, without mention of any contract or agreement in which the trustee participated. . On the other hand, Mr. Lucas and Thomas Judkins may have agreed that the latter should purchase for the former; that agreement and its terms may have been fully understood by the trustee; and yet that could not, without more, affect the sale. An averment thus ambiguous and indeterminate is not sufficient as a foundation for relief in chancery.

Inasmuch as all the charges in the bill which impute to the trustee actual fraud, or which complain of combination and collusion between him and the purchaser or his agent, fail for want of proof; and inasmuch as the bill contains no sufficient averment to let in the proof of the trustee's interference or agency, in having the purchase made for Henry Lucas, the beneficiary, it results that the decree of the chancellor must be reversed. We will not, however, finally dispose of the case, but will remand it, that the chancellor may consider and pass upon such motions as may be submitted for his consideration.

In the present condition of the record, we deem it improper to pronounce on the effect of the evidence. Should an amendment of the pleadings be allowed, the evidence before the court may not be the same; and if it should be, its effect as proof may be changed by some new aspect of the pleadings.

We take occasion to state, also, that we carefully withhold any expression of opinion at this time, on the phase of .the case which, it is contended, Thomas Judkins' testimony establishes. It will be time enough to pronounce upon it, when it comes legitimately before us on a correspondence of averments and proof.

The decree of the chancellor is reversed, and the cause remanded.