No. 2201.

P. BARRY ET AL. *v.* SCREWMEN'S BENEVOLENT ASSOCIATION.

1. TREASURER'S BOND—MISAPPROPRIATION—LIABILITY OF SURETIES.—
The sureties on the bond of the treasurer of a corporation are as much
liable for misappropriation subsequent to execution of the bond, of funds
in the hands of the treasurer as such, at the time the bond was executed,
as they are for the misappropriation of money which came into his
hands as treasurer afterwards.
2. SAME.—They are not liable for such misappropriation if it occurred be-
fore they became liable by their contract for his misconduct. The bond
can have no retroactive effect. (Hetten v. Lane, 43 Texas, 288, etc.)
3. SAME—PRACTICE.—In a suit against the sureties on a treasurer's bond
it appeared from the petition that the treasurer properly disbursed
more money after the bond was executed than came into his hands after
that date. The petition further showed that more money than was
claimed in the action came into the treasurer's hands prior to the exe-
cution of the bond. *Held:*
  (1) Unless the petition clearly alleged that the money received by the
  treasurer prior to the execution of the bond was in his hands at the time
  of its execution, the petition was subject to demurrer.
  (2) See opinion for allegations held insufficient.
4. SAME—EVIDENCE—OFFICIAL REPORT.—A report filed by the treasurer,
after the bond was executed, in accordance with his official duty, and in
pursuance of the laws of the corporation, was admissible to show that
the money was in his hands after the bond was executed, but the sure-
ties could show that the report was untrue. (United States v. Boyd, 5
How., 50; Keowne v. Love, 65 Texas, 158, etc.)
5. SAME—PRIVATE PAPERS.—A check book used by the treasurer in his
private business, containing stubs showing that drafts had been drawn
by him at certain times was inadmissible for the purpose of showing
when funds had been converted by him.

APPEAL from Galveston. Tried below before the Hon. William
H. Stewart.

The opinion states the facts.

James B. Stubbs and R. G. Street, for appellants, cited Hetten
v. Lane, 43 Texas, 288, 289; Commercial Bank v. Jones et al., 18
Texas, 811; Blum v. Wettermark, 56 Texas, 80; Myers v. United
States, 1 McLean, 493; Farrar v. United States, 5 Peters, 373;
United States v. Boyd, 15 Peters, 187; United States v. Linn, 1

Howard, 104; United States v. Eckford, 1 Howard, 250; Bruce v. United States, 17 Howard, 437; Murfree on Official Bonds, sections 450–453, 638, 412; Burden of Proof, Ib., 590; Rule of *Strictissimi Juris*, Ib., sections 301, 620, 710; Brandt on Suretyship, sections 464, 466, 467, 468, 476; Bissell v. Saxton; 77 New York, 191; same case, 66 New York, 61; State v. Roberts, 21 Arkansas, 260; Draper v. Joiner, 9 Humphreys, 614; Wren v. Kirton, 11 Vesey, 380; Board of Education v. Fonda, 77 New York, 350; Vivian v. Otis, 24 Wisconsin, 518; Mahaska v. Ingalls, 16 Iowa, 81; School District of Montezuma v. McDonald, 39 Iowa, 564; Mann v. Yazop, 31 Mississippi, 574; Pawpaw v. Eggleston, 25 Michigan, 36; Hyatt v. G. B. S. M. Co., 41 Michigan, 226; Bryant v. Owens, 1 Kelly (Ga.), 374; The State v. Polk, 14 Lea (Tenn.), 1; same case, 9 American and English Corp. Cas., 154; Yoakley v. King, 10 Lea (Tenn.), 67; same case, 2 American and English Corp. Cas., 361.

*Finlay & Rose*, for appellee, on the introduction of the treasurer's report in evidence, cited Hetten v. Lane, 43 Texas, 279; Murfree on Official Bonds, section 219, 605; Bruce v. United States, 17 Howard, 437; Morley v. Hetemore, 20 American Reports, 266; Roper v. Sangamon, 33 American Reports, 60; Chicago v. Gage, 35 American Reports, 182.   On the admission of the stub book in evidence they cited LaCoste v. Bexar County, 28 Texas, 420; Murfree on Official Bonds, section 602; Atlas Bank v. Brownell, 11 American Reports, 231; Greenleaf on Evidence, volume 1, sections 108, 110, 124, 187, and notes on *res gestœ* and hearsay; Brandt on Suretyship, sections 518, 521, 522.

STAYTON, ASSOCIATE JUSTICE.   This action was brought by the appellee against E. A. Smith and the sureties on his bond as treasurer of that corporation, to recover the sum of four thousand six hundred and thirty-nine dollars and forty-two cents, which, it was alleged, the treasurer had misapplied.

The petition alleges that Smith was elected treasurer on December 24, 1884, and that he qualified by giving the bond, sued upon, on January 21, 1885, which was conditioned that he should make faithful returns to plaintiff of all funds, papers, stocks, bonds or other valuable papers or property intrusted to his safe keeping.   It contains the further averment "that as treasurer of the plaintiff association for the year commencing January, 1885, said E. A. Smith received and had intrusted to him by

plaintiff divers large sums of money and paid out divers sums of money for plaintiff, an itemized account of which receipts and disbursements, with the dates of each item, is hereto attached, marked "Exhibit B," and made a part of this petition, showing a balance due plaintiff by defendants on the twenty-fourth day of July, 1885, in the sum of four thousand six hundred and thirty-nine dollars and forty-two cents."

The account attached as "Exhibit B" shows this item: "January 1, 1885, To cash as per report, five thousand one hundred and forty-two dollars and ninty-two cents;" the rest of the account is a statement of the cash received and disbursed by the treasurer from January 3 to July 11, 1885, the latter exceeding the former.

There are averments that Smith was removed from office on July 24, 1885; that demand had been made for the sum claimed; that he had failed to pay it and "that the said E. A. Smith at and before the twenty-fourth day of July, 1885, being indebted, as aforesaid as treasurer aforesaid, to plaintiff, in the sum of four thousand six hundred and thirty nine dollars and forty-two cents, for money had and held by him as aforesaid, converted all of said sum of money to his own use and benefit."

All the sureties filed general demurrers, and two of them filed special exceptions, the substance of which is fairly set out in the first assignment of error, which is as follows:

" The court erred in overruling defendant's fourth and sixth exceptions to the plaintiff's original petition, with fourth exception called in question the sufficiency of the petition in failing to allege that "the first item of exhibit B, to-wit: ' January 1, 1885, To cash as per report, five thousand four hundred and twelve dollars and ninety-two cents, represented that amount on hand or in the possession of the treasurer at the commencement of these defendants' alleged liability upon said bond, or that said amount was ever paid to said Smith by plaintiff at any time during the period when the said liability attached to defendants; and it does not appear from the petition that said sum was in the hands of the treasurer, subject to plaintiff's draft, on the date of the execution of said bond and the attaching of defendant's liability thereunder." And the sixth exception was as follows: " Because it appears from the terms of the bond, a copy of which is annexed to the petition, that these defendants are not liable for any funds or other property entrusted to the safekeeping of said Smith by said association before the execution of the bond sued

on; defendant's liability, if ary, being only for the faithful return of such funds or property as might be entrusted to said Smith subsequently to the execution of said bond." These were overruled.

There is no direct averment in the petition that Smith was treasurer for the year preceding January 21, 1885, or for any former period; but we are of the opinion that the averments taken together, show that he was treasurer on January 1, 1885, and that in that character he is alleged to have received and to have had in his hands on that day the sum of money mentioned as the first item in the exhibit made a part of the petition.

It is an elementary rule of pleading that a plaintiff must allege such facts as entitle him to the relief which he seeks. The bond made the foundation of this action imposes no liability on its makers for any misappropriation of money which may have been made by the treasurer prior to the time it was executed. It can have no retroactive effect. (Hitten v. Lane, 43 Texas, 288; United States v. Boyd, 15 Peters, 187; Bruce v. United States, 17 How., 442; Bissell v. Saxton, 66 N. Y., 55.

If money belonging to the plaintiff came into the hands of the treasurer, and was in his hands as treasurer when the bond was executed, then his sureties are as much liable for its subsequent misappropriation by him as would they be for the misappropriation of money which came into his hands as treasurer after the bond was executed. If, however, money came into his hands as treasurer before the bond was executed, the sureties are not liable for it, if it was misappropriated before they became liable, by their contract, for his misconduct.

The petition shows that more money than is claimed in this action came into the hands of Smith, as treasurer, prior to the time the bond was executed, but to state a cause of action against the sureties on that bond, it is necessary that the petition allege that the money, so in his hands, was there when the bond was executed, it appearing from the petition that the treasurer properly disbursed more money after the bond was executed than came into his hands after that date. If this is not denied, the demurrers ought to have been sustained.

Do the pleadings aver this fact, giving to them the benefit of all inferences which may be fairly drawn from the language used? The part of the petition which we have copied above, read in connection with the "exhibit" to which it refers, alleges, in effect, that during the period intervening the last day of De-

cember, 1884, and July 24, 1885, large sums of money came into or were in the hands of the treasurer, and that the aggregate of these sums exceeded the disbursements during the same period in a sum equal to that sued for.

From these averments the inference may be drawn that such facts existed as would fix liability upon the treasurer without reference to the bond, but no inference can be drawn, from the facts stated, that the treasurer misapplied or failed properly to account for the sum claimed, or any other which was in his hands when the bond was executed, or which subsequently came into his hands. The petition shows clearly that the treasurer disbursed more money after the bond was executed than he received after that time; thus, on its face, admitting that to fix liability on the sureties, they must be shown to be liable for money alleged to have been in the hands of the treasurer on January 1, 1885; yet there is no clear statement that the sum alleged to have been in his hands at that time so continued until the bond was executed.

In the other paragraph of the petition, copied above, we have an averment that E. A. Smith, as treasurer, was indebted to the plaintiff, in the sum sued for, on account of money which came into his hands as shown by the exhibit, which at and before the twenty-fourth day of July, 1885, he converted to his own use. As said in Hillebrant v. Booth, 7 Texas, 501, "It is an elementary and primary requisite of a good plea that it be capable of proof, and, consequently, that it be true. The pleader must state the facts on which he relies, according to the truth of the case, or his pleading will not avail him on the trial. Truth, and of course consistency, is essential to the validity of every pleading. Hence, if it judicially appear to the court, from the defendant's own admissions or statements in his plea, that it is untrue, it will be of no validity. If the averments be inconsistent, and thus contradict and falsify themselves, they can not be susceptible of proof. A plea setting up as a defense failure of consideration, which alleges that such failure consisted in the existence and non-existence of a given fact, presents on its face an absurdity, and, of consequence, must be invalid."

This rule applies to the pleadings of either party. If the conversion of the fund took place before July 24, 1885, it could not have occurred on that date, and if it took place at or on that date it could not have occurred before.

The misapplication may have occurred before the date men-

tioned and the sureties not be liable, for the word "before" covers all the time intervening the date named and the time the money came into the treasurer's possession, while a conversion by the treasurer during any part of that time, preceding the date of the execution of the bond, would not fix liability on the sureties. The defect in averment was clearly pointed out by demurrers, the plaintiff declined to amend and insisted on the sufficiency of the petition as it stood, wanting in certainty and equivocal as it was, and in such case the general rule that an equivocal expression in pleading is to be construed against the party using it ought to be applied. (Camp v. Gainer, 8 Texas, 373; Fowler v. Davenport, 21 Texas, 634.)

It may be that the plaintiff intended to rely upon the fact that the funds were in the hands of the principal on January 1, 1885, to fix the liability of the sureties on a bond subsequently executed, and so without reference to the time at which the misapplication occurred. If so, the law, as we understand it, declares that fact insufficient to affect the sureties. If it expected to prove that the conversion occurred after the bond was executed, it should have alleged that fact. In a report filed by the treasurer, after the bond was executed, in accordance with his official duty, and in pursuance of the laws of the corporation, he showed that the money was in his hands after the bond was executed, and it is urged that the court erred in admitting it.

Such evidence, in truth, was admissible, even as against the sureties; but they might show that the report was not true. (United States v. Boyd, 5 How., 50; Bank v. Smith, 12 Allen, 249; Blair v. Ins. Co., 10 Mo., 567; Caskey v. Haviland, 13 Ala., 321; Bissell v. Saxton, 66 N. Y., 61; Rodes v. Commonwealth, 6 B. Monroe, 362; Keowne v. Love, 65 Texas, 158.) Such statements by a person while in office, in the course of official duty, are generally held admissible as *res gestæ*.

A check book used by the treasurer in his private business, containing stubs, showing that drafts had been drawn by him from time to time, was offered for the purpose of proving that the funds which his report showed he had in hand on January 1, 1885, had been converted by him before that time or before the bond was executed, and upon objection it was excluded. We do not see any ground on which it could have been admitted. For the error of the court in overruling the demurrers, the judgment will be reversed and the cause remanded, and it therefore be-

comes unnecessary to consider the other assignments of error. It is so ordered.

*Reversed and remanded.*

Opinion delivered January 21, 1887.