JOHN A. EWING ET AL. V. ARTHUR B. DUNCAN ET AL.

No. 7637.

1. Journals of Senate, Showing Vote on Bill.—Chapter 29, Laws of Twenty-second Legislature, shows by certificate attached that it "originated in the House and passed the same by two-thirds vote, ayes 87, noes 1; and passed the Senate by two-thirds vote, ayes 24, nays 24." The act contained the emergency clause and was to take effect from its passage. *Held*, it is competent to examine the Senate Journal as the best evidence of the actual vote upon the passage of the bill. The journal shows

its passage by largely over a two-thirds vote by the Senate, and it is considered a law in force from and after its passage.

2. **Floyd City.**—That Floyd City did not receive two-thirds of the votes cast for the county seat of Floyd County, it not being within five miles of the center of the county, by reason of the foregoing act, does not render the election illegal.

3. **Election Presumed to Have Been Ordered.**—In the absence of an allegation to the contrary it would be presumed that an election held was so held in pursuance of an order of some officer or body having the authority to make it.

4. **Orders of Commissioners Court.**—The statute provides that a record shall be made of the proceedings of the Commissioners Court. Rev. State., arts. 1527, 1528. There is no provision touching these orders such as in probate matters, that an order not entered of record shall be a nullity. Rev. Stats., art. 1802. It is held that the fact that no order appears upon the minutes of the Commissioners Court does not authorize the holding that the election was void.

5. **Elections Organizing Counties.**—Such elections are not required to be held at a general election. The State v. Cook, 78 Texas, 406.

6. **Contested Election.**—When an election is drawn in question in a judicial inquiry the legal votes actually cast will determine the result. If Floyd City received a majority of the votes, as is practically alleged in the petition, the fact that the county judge failed to do his duty in canvassing the vote is no ground for vacating the election. In this case the vote was canvassed by the county commissioners, the judge being present but not voting.

7. **Pleading—Alleging Illegal Voting.**—It was alleged "that at and just previous to said election" the owners of the land upon which Floyd City is situated conveyed to sundry voters lots in the town for the purpose of influencing their votes at said election, though no promise was exacted from the donees that they would vote for that place." While such persons probably should be considered illegal voters, still the allegation is not sufficiently certain to put the issue upon trial.

8. **Same.**—Courts sit to try causes upon positive averments, and not to hear and determine issues presented by allegations which affirmatively show that the pleader is in doubt as to the truth of the matter alleged.

9. **Certainty in Pleading.**—A party who seeks to enjoin the action of the Commissioners Court of a county should do so upon unqualified allegations, and not upon averments which show upon their face that the facts relied upon are a matter not of knowledge but of speculation. See facts in illustration.

APPEAL from Floyd. Tried below before Hon. J. V. Cockrell.

This is a suit for a writ of injunction to restrain the defendants from making an alleged illegal expenditure of public money in the erection of public buildings at Floyd City, for county purposes, upon the ground that said place had not been legally selected as the county seat of Floyd County at an election held for that and other purposes; and for a writ of mandamus to compel the newly elected county judge in said county to order an election for a county seat in said county. The plaintiffs' petition was presented to the judge of said district in vacation and he declined to grant the writs therein prayed for, but made an order directing the district clerk to file said petition to be tried upon its merits at the regular term of the court in said county. The defendants filed exceptions to plaintiffs' petition when the case was called in its

regular order, which exceptions were sustained by the court, and plaintiffs declining to amend the cause was dismissed by the court. Plaintiffs appealed.

*McCall & Britt Bros.*, *Joseph Hall*, and *N. P. Jackson*, for appellants.—1. In the first selection of a county seat in and for a newly organized county it requires two-thirds of all the votes cast for such purpose to legally select a place more than five miles from the geographical center of such county as a county seat. Rev. Stats., art. 695; The State v. Alcorn, 78 Texas, 387.

2. A County Commissioners Court can not legally issue and circulate county bonds and expend public money, in which every citizen, voter, taxpayer, and property holder in such county has a pecuniary interest, for the purpose of erecting public buildings for the use of such county at a place not legally selected as the county seat; and a proceeding by injunction is the proper action to restrain such expenditures. Rev. Stats., art. 705; Caruthers v. Harnett, 67 Texas, 131; Caruthers v. The State, 67 Texas, 136, 137.

3. If the court has to pass on the legal effect of the vote cast for county seat in order to determine whether the acts complained of are unlawful, it does not follow that the plaintiffs' suit is for the purposes of contesting the election for county seat, as the acts complained of were not connected with, but subsequent to and independent of the election. Caruthers v. Harnett, 67 Texas, 131.

4. The Commissioners Court of Crosby County had no authority under the law to canvass the vote cast for county seat in Floyd County and declare the result. Rev. Stats., art. 698.

5. When a county has been organized and no county seat selected in accordance with the law at the time of its organization, it becomes the duty of the county judge elect to order an election for that purpose, and upon his refusal so to do a mandamus is the proper proceeding to compel the performance of that duty, it being purely ministerial. Rev. Stats., art. 698; Caruthers v. The State, 67 Texas, 140.

No brief for appellees reached the Reporter.

GAINES, ASSOCIATE JUSTICE.—This suit was brought by the appellants to restrain the Commissioners Court of Floyd County from making an expenditure of the county funds in the erection of public buildings for the use of the county at Floyd City, and to compel the county judge to order an election for the selection of a county seat. The judge refused to grant a preliminary injunction, and upon the hearing a demurrer to the petition was sustained and the suit dismissed.

It was alleged in the petition that on the 28th day of May, 1890, a pretended election was held for the organization of Floyd County, which

theretofore had been attached to Crosby County for judicial purposes; that the Commissioners Court of the latter county canvassed the vote at that election and declared that Floyd City was duly elected as the county seat of Floyd County; and that the election as to the county seat was void for the following reasons: First, because there was no order of the Commissioners Court of Crosby County fixing the day for the election; second, because the election was not held on the day provided for a general election of State and county officers; third, because the county judge of Crosby County did not canvass the vote and declare the result; fourth, because Floyd City was more than five miles from the geographical center of the county, and did not receive two-thirds of the votes; and fifth, because Floyd City did not receive a majority of the legal votes cast at the election.

By a recent act of the Legislature it is provided "that all county seats located in newly organized counties more than five miles from the geographical center of the county by a majority of votes cast at such elections held for the location of county seats be and the same are hereby declared the county seats of said counties until such time as the same may be removed by election; and said elections at which said county seats were chosen and located shall be as valid and binding as if such county seats had received two-thirds of all the votes cast at such elections for county seats; and all counties organized between the taking effect of this act and any other act passed by this Legislature affecting county seat elections where a vote is had for the location of a county seat, the place receiving a majority of the votes cast for county seat shall be the county seat of said county until the same is removed by a vote of the people in accordance with the law; provided, that this shall not apply to nor in any manner affect any county where a subsequent election has been held for the location of the county seat and the same has been removed from such place as was declared the county seat at the election held for the organization of the county." This act was passed March 5, 1891, and took effect from its passage. There is a manifest error in the certificate of the secretary of the Senate attached to the bill, and since the printed laws will probably contain the certificate as written, we think it proper to call attention to it. It reads as follows: "I certify that the within named H. S. S. B. No. 15 passed the Senate by a two-thirds vote—yeas 24, nays 24. March 5, 1891." We have caused the Senate Journal to be examined as being the best evidence of the actual vote upon the passage of the bill, and find that it received largely more than a two-thirds majority. For this action there is ample authority. 1 Whart. on Ev., sec. 290, and cases cited, especially Ottawa v. Perkins, 94 U. S. Rep., 260. Since the law is in effect it follows that the election can not now be set aside merely because Floyd City failed to receive two-thirds of all the votes cast for

county seat at the election. That ground may also be laid out of the case.

But the act does not aid the election in any other particular, and therefore we must pass upon the other questions presented by the appeal.

The demurrers sustained to the petition were all general in their nature. Though they set up specific reasons why the petition should be held insufficient, none of them were upon the ground that any allegation was uncertain or indefinite. The petition distinctly avers that Floyd City did not receive two-thirds of the votes cast for the county seat at the election, but by reason of the foregoing act that has ceased to be a ground for holding the establishment of the county seat at that place illegal. But the act heals no other vice in the proceedings affecting the election. Laying then the fact of the failure of Floyd City to receive a two-thirds vote out of the case, we will proceed to consider in their order the other grounds upon which the plaintiffs rely in their petition to show the election void.

In reference to the order of election, it is alleged in the petition that the Commissioners Court of Crosby County, upon a petition of citizens of Floyd County, laid off the latter into election precincts and appointed managers of an election to be held for the purpose of organizing the county. A copy of that order is made an exhibit to the petition. It is also averred that "no order to hold an election for the organization of said county and a location of the county seat of said county was made or entered of record upon the minutes of said court at said term or at any other term, either by the said Commissioners Court or by the county judge of said Crosby County, and the entire minutes of said court show no order of said commissioners or said county judge ordering said election or giving the date at which said election for said organization and for selection of a county seat should be held or take place; and there is no other order of record in said court, except the one found herein, in regard to said election except the one locating the county seat of said Floyd County hereinafter shown to the court." The meaning of these averments is not clear. Did the pleader intend to allege that no order for the election and fixing the time thereof was ever made, or that no such order was entered of record upon the minutes? If the former was the intention the allegation might have appropriately closed with the averment that the order was never made. The words "made or entered of record" may mean "made of record or entered of record," and the subsequent averments would seem to indicate that the pleader intended that such construction should be placed upon them. Although the rule requires that upon general demurrer every reasonable intendment should be indulged in favor of the petition, we think that in case of a doubt of this character it should be resolved against the pleader. The petition should contain distinct and unambiguous averments; and if it was in-

tended to allege that no order for the election was made, why this particularity in showing precisely what orders were entered of record and alleging that there was no other? We take the averment then to be that no order directing and fixing the time for the election was ever entered upon the minutes of the Commissioners-Court. It is averred also that the election took place on the 28th day of May, 1890, and in the absence of an allegation to the contrary it would be presumed that it was held in pursuance of an order by some officer or body having the power to make it. If the order was in fact passed by the Commissioners Court and there was a failure to enter it upon the minutes, would that render the election void? We think not. The statute provides that a record shall be made of the proceedings of the Commissioners Court. Rev. Stats., arts. 1527, 1528. In reference to the orders of the County Court in reference to estates of deceased persons, etc., it also provides that all orders shall be recorded and that any supposed order not entered of record shall be a nullity. Rev. Stats., art. 1802. There is no such provision with reference to the orders of the Commissioners Court. Accordingly it was held by this court in Brown v. Ruse, 69 Texas, 589, that an order of the Commissioners Court may be proved and given effect although it has never been entered upon the minutes of the court. See same case, 67 Texas, 318. We conclude that the fact that no order appears upon the minutes of the Commissioners Court of Crosby County directing and fixing the time of the election does not authorize us to hold the election void. Whether the Commissioners Court or the county judge should have ordered the election we need not inquire. That the statute for the organization of unorganized counties attached to others for judicial purposes does not require the election to be held at a general election was expressly decided in The State v. Cook, 78 Texas, 406.

Another ground upon which it is alleged that the election was illegal is that the county judge did not canvass the returns and declare the result. This duty is devolved upon that officer. Rev. Stats., art. 668. An order of the Commissioners Court of Crosby County is made a part of the petition, from which it appears that that body assumed to pass upon the returns, and to declare Floyd City duly elected, although it appears that that place had received only a majority and not two-thirds of the votes cast for county seat. The county judge presided over the court when the order was passed, but did not vote upon the question. The presumption may be that he did not do his duty in the premises, and that the result of the ballot was never legally declared. But it is averred that at the election Floyd City received forty-one votes and Della Plain, its only opponent, received twenty-seven votes, as shown by the returns as canvassed by the Commissioners Court; and it is not averred that such was not the vote as actually cast. From

other averments in the petition it is to be presumed that Floyd City received a majority of the actual votes. The certificate of an officer whose duty it is to canvass the votes and to declare the result is prima facie evidence of the correctness of the result so declared. Its office is to furnish evidence of the vote. But when the election is drawn in question in a judicial inquiry the legal votes actually cast will determine the result. Therefore if Floyd City received a majority of the votes, as is practically alleged in the petition, the fact that the county judge failed to do his duty is no ground for vacating the election.

But as a further ground for holding that Floyd City was not duly chosen, it is averred that "at and just previous to said election" the owners of the land upon which Floyd City is situated conveyed to sundry voters lots in the town for the purpose of influencing their votes at said election, though no promise was exacted from the donees that they would vote for that place. We incline to the opinion that the votes of all persons who received lots in the town by donation after the election had been ordered and before their votes were cast and who were thereby induced to vote for Floyd City, should be rejected. But the allegation in reference to this matter is that the persons who were so influenced to vote for Floyd City are unknown to petitioner, because their deeds had never been recorded, but they were more in number than the alleged majority cast for that place. If the allegation had been excepted to on account of its vagueness, it would seem that the exception should have been sustained.

But the demurrers in this case being to the substance and not to the form of the petition, the question we have is whether or not the allegations in reference to this matter are good upon general demurrer. We are of the opinion that the question must be answered in the negative. Courts sit to try causes upon positive averments, and not to hear and determine issues presented by allegations which affirmatively show that the pleader is in doubt as to the truth of the matter alleged. An exception exists where alternative averments are made, because in such a case it is averred that if the one state of facts does not exist the plaintiff is entitled to recover upon another. It is true that if the fact be positively averred and without qualification, the court has no means of determining the good faith of the allegation but by a trial of the cause. But if the averment in this case were that the plaintiffs have reason to suspect that illegal votes for Floyd City had been cast for it at the election greater in number than the majority it received, would this be deemed sufficient allegation of the fact? We think not. It is held that it is not sufficient to aver in a bill in equity "that one of the defendants alleges and that the plaintiff believes the statement to be true; because the defendant may allege what is quite false and the plaintiff may believe it to be true. The fact must be positively alleged by the plaintiff

in his bill." Story's Eq. Pl., sec. 241, citing Egrement v. Cowell, 5 Beav., 620. So an allegation that the plaintiff "is informed and believes" that a material fact exists is not sufficient. It should also be alleged that the fact does exist. Cainover v. Abbott, 30 Ala., 416; Lucas v. Oliver, 34 Ala., 626.

In the present case it is in the first place alleged that the plaintiffs "aver and charge that said votes, or at least a majority thereof, cast for county seat at Floyd City, as they are informed and believe and so charge, were influenced," etc. If there had been no qualifying averment in effect that Floyd City did not receive a majority of the legal votes, we are of opinion the allegation would have been sufficient, at least upon general demurrer. But when the pleader proceeds to aver that he neither knows the number of the illegal votes nor the name of any illegal voter save one, it seems to us that it shows that the allegation is purely speculative, and that all the averments as to this matter taken together amount to no more than an allegation of a suspicion of the existence of the facts relied on to set aside the election. He avers the conclusion, but expressly admits that he can not allege the specific facts from which that conclusion must be deduced. There were but sixty-eight votes in all cast at the election for the candidates for county seat. How it can be known that Floyd City did not receive a majority of the legal votes, when neither the number nor the names of those who were improperly induced to vote for that place is known, the petition does not explain. Can it be said under these circumstances that the allegation that Floyd City did not receive the required number of legal votes is made in good faith? It appears that the object of the allegations in regard to this matter was to take the chances of establishing a case, although it is not known that a case exists. It is somewhat analogous to a "fishing bill," which has been defined to be "one which shows no cause of action and which endeavors to compel defendant to disclose one in plaintiff's favor." Carroll v. Carroll, 2 Barb., 293. The defendants here are the county judge and the commissioners of Floyd County; and they are not presumed to know any more about the facts than the plaintiffs know. Therefore the petition could not be treated as a bill of discovery, if such a proceeding was competent under our practice. A party who seeks to enjoin the action of the Commissioners Court of a county should do so upon unqualified allegations, and not upon averments which show upon their face that the facts relied upon are a matter not of knowledge but of speculation.

We find no error in the judgment, and it is affirmed.

*Affirmed.*

Delivered May 29, 1891.