## DALLAS RY. & TERMINAL CO. v. REDMAN.

### No. 1489.

Court of Civil Appeals of Texas. Eastland.

Oct. 4, 1935.

Rehearing Denied Nov. 15, 1935.

Worsham, Rollins, Burford & Hincks, of Dallas, for appellant.

Jack Burroughs and Hughes & Monroe, all of Dallas, for appellee.

FUNDERBURK, Justice.

This suit was brought by Virginia Redman against Dallas Railway & Terminal Company to recover damages for personal injuries. Plaintiff's petition sought to allege actionable negligence resulting in defendant's street car striking the plaintiff and throwing her against a passing automobile, which in turn threw her against the pavement, causing the injuries described. Upon a jury trial, all issues submitted were found by the verdict in favor of the plaintiff. From a judgment for $7,000 rendered in accordance with such verdict for the plaintiff, the defendant has appealed.

Many questions are presented of varying degrees of interest and difficulty. Only one, which we have deemed to be properly determinative of the appeal, will be discussed. That is, whether plaintiff's petition, as against a general demurrer, was sufficient to state any cause of action. This question is dependent upon whether the petition contains "a statement * * * of the facts constituting the plaintiff's cause of action." R.S. 1925, art. 1997. To be a good pleading, by all tests, such "statement" should be in "logical and legal form," but a defect consisting of a want of logical and legal form, provided it be a statement of all the material facts, can only be corrected by action upon a special exception. The question of whether a pleading contains "a

statement * * * of the facts" constituting a cause of action is subject to certain tests. One is: Are the essential averments consistent? Of the facts stated, all essential facts must be susceptible of proof. Subject to the rule that inconsistent allegations of fact may be set forth in separate counts, or in the alternative, the essential facts alleged as constituting the cause of action must be consistent. Townes' Texas Pleading, p. 425; Hillebrant v. Booth, 7 Tex. 499; Rowe v. Horton, 65 Tex. 89; Barry v. Screwmen's Benev. Ass'n, 67 Tex. 250, 251, 3 S.W. 261; Steinback v. City of Galveston (Tex.Civ.App.) 41 S.W. 822; Stephens v. Stephens (Tex.Civ.App.) 281 S.W. 1096; Kynerd v. Security Nat. Bank (Tex.Civ. App.) 207 S.W. 133; Stanley v. Sumrell (Tex.Civ.App.) 163 S.W. 697. The foregoing authorities support the proposition that if a plaintiff alleges a fact material to the statement of a cause of action, but also (not in a separate count, or in the alternative) alleges another fact which, if true, the first could not be true, the allegations nullify each other. The result is the same as if the fact be not alleged at all. A defendant has the right to have taken as true any material allegation of fact in plaintiff's petition. No proof thereof by defendant will be required in order that he may have the full benefit of such fact. If, therefore, a material fact alleged in plaintiff's petition, be, in effect, denied by the plaintiff by his averment of an inconsistent fact, the pleading affords no basis for the production of evidence to prove such fact. Plaintiff cannot support by evidence a fact contrary to his own allegations concerning an essential fact. It is elementary, of course, that he cannot recover without proof of every material fact. From these considerations it is obviously true that plaintiff's petition may allege every fact necessary to show a cause of action, and, yet, his petition be subject to a general demurrer if his allegation of one or more essential facts be in legal effect nullified.

It will be assumed as to the pleading now under consideration, that it states all the facts necessary to show a cause of action. If it be insufficient, it is so because the allegation of one or more facts is nullified by the allegation of inconsistent facts. The pleading contains no separate counts. None of the allegations of fact, as distinguished from legal conclusions, is alleged in the alternative to any other fact.

Plaintiff alleged that while she was on the north side of Elm street in Dallas waiting for a street car going west to take her to her place of work she saw a street car approaching about fifty feet away, and upon signal from her the speed of the car was retarded "from a speed in excess of 20 miles an hour when said street car was approximately fifty feet east of the plaintiff * * that plaintiff saw said car slow up when it was about fifty feet from her, and that while she does not know, and cannot approximate accurately the rate of speed to which the momentum of said car had been retarded she alleges that there was considerable slowing up of said car indicating that it was going to stop; that the front end thereof was even with the west wall of the Continental Gin Company which was the usual and customary place where the plaintiff boarded same, and where the defendant usually accepted her as a passenger; that the speed to which the defendant reduced the motion of said car induced the plaintiff to believe that he intended to stop and caused her to come closer to the track * * for the purpose of boarding said car * * that while she was a distance of about two feet from said car track and said street car was only a distance of three or four feet away from her still approaching at said retarded speed, an automobile which plaintiff had not previously seen * * * suddenly started passing said street car and was between plaintiff and the curb from which she had just stepped so that she could not return thereto and get out of the way; and that the defendant's motorman saw the plaintiff at said time * * * and saw that plaintiff was compelled to step on the street car track to avoid being hit by said automobile; that plaintiff did step on the said track about two feet further west of where she would have boarded the front end of said street car, and was out of the way of said automobile and was safe and would not have been injured had the defendant's motorman applied his brakes and stopped said street car at the usual and customary point." As indicated, parts of the above quotation from the petition have been omitted. This is done for the purpose of better appraising both the allegations quoted and those omitted. Considering first the allegations quoted, it seems clear that they eliminate as grounds of actionable negligence (meaning thereby negligence which was a proximate cause of the injuries) ev-

ery act or omission of the defendant charged as negligence and a proximate cause, whether with reference to the speed of the car, ringing the bell, keeping a lookout, observing ordinances, or anything else occurring prior to the instant when plaintiff stepped upon the street car track five or six feet in front of the moving car. According to her allegations, plaintiff was standing two feet from the track, had seen the advancing car fifty feet away, and the motorman had seen her in that position. No fact is alleged which would make it his duty to foresee under such circumstances that she would suddenly step immediately in front of the street car. Therefore, no act or omission charged to be negligence on the part of the defendant could under the facts alleged have resulted in any injury to the plaintiff but for her act of suddenly stepping upon the track in front of the car. No act or omission charged as negligence which had occurred before, or was in operation prior to the time she stepped upon the track, could be a proximate cause of her injury, unless such injury, or like injury, should have been reasonably foreseen as a natural and probable consequence of such act or omission. There is no presumption that the motorman was aware of the unlawful action of the automobile driver, and there is no allegation to show that he did know of it prior to plaintiff's stepping on the track. No fact was alleged to charge the defendant with any duty to the plaintiff because of the action of the automobile driver prior to that time. By her own allegations, plaintiff, when she stepped upon the street car track, was in a place of safety but for the alleged wrongs of the defendant through its motorman then and thereafter occurring. It is, therefore, our conclusion that plaintiff's petition stated no cause of action unless it was one involving a breach of duty arising because of plaintiff's presence on the street car track under the circumstances alleged by her as before stated.

Let us recall here that the petition alleged "that the defendant's motorman * * saw that plaintiff was compelled to step on said street car track to avoid being hit by said automobile." It was then further alleged "that the operator of said street car actually saw, realized and discovered the position of peril and danger in which the plaintiff herein was placed in time to have avoided striking the plaintiff and injuring her at the time in question, but that said motorman after having seen, discovered and realized the peril and danger in which plaintiff was placed failed to exercise care to stop the street car or apply the brakes and avoid striking the plaintiff although he could have done so without putting either himself or other passengers on said street car, or the street car itself in danger of being injured." Regardless of the fact that the petition may have been insufficient to state a cause of action based upon any breach of duty arising before plaintiff stepped upon the track, it would seem that the foregoing allegations in connection with those previously quoted, if not nullified, would be sufficient to state a cause of action arising after she got upon the track on the theory of discovered peril. But, as an expressly additional ground of negligence, and, therefore, of course, not one asserted in the alternative, plaintiff alleged as a proximate cause of her injuries "that the operator of said street car at the time and on the occasion herein alleged failed to exercise care to discover and realize the position of peril and danger in which the plaintiff herein was placed at the time and on the occasion and that the said operator could have, in the exercise of due care, discovered the position of peril and danger in which plaintiff was placed." Manifestly, if the proximate cause of plaintiff's injuries was the negligent failure of the defendant to discover her position of peril, then the alleged negligence of the defendant in failing to stop because her position of peril and danger had been discovered could not be a proximate cause of her injuries. There could be no cause of action based upon discovered peril alone if, as plaintiff alleges, the motorman did not see her danger in time to prevent it. The situation is the same as that which recently prompted us to remark upon a seemingly "growing tendency in negligence cases for the plaintiff to specify so many and detailed separate and independent grounds of negligence, and for defendants, likewise, to allege so many separate and distinct grounds of contributory negligence, that quite often it appears in the very face of the pleadings that if a particular act or omission is a proximate cause of the injury, another act or omission also alleged to be a proximate cause could not be." Jeff T. English v. Terry (Tex. Civ.App.) 85 S.W.(2d) 1063, 1066. Under the principles hereinbefore stated, the facts alleged in plaintiff's petition uncontradicted by other allegations therein, do not, in our opinion, constitute the required "statement

* * * of the facts" to show a cause of action for which reason the judgment should be reversed, and the cause remanded, which is accordingly so ordered.

## On Rehearing.

Plaintiff (appellee) in her motion for rehearing argues that the inconsistent allegations, because of which we held that her petition was subject to general demurrer, were stricken out upon special exceptions, thereby resulting in an elimination of the inconsistencies. There was no order striking out any part of the pleadings, unless such was the legal effect of the order sustaining the exceptions. Let us assume, without deciding, that such was the effect, in law, of the court's action on the special exceptions. The questions then arising are: (1) Did the remaining allegations of the petition sufficiently state a cause of action? and (2) If so, did that fact show that the action of the court in overruling the general demurrer was rendered harmless? We think that even though it was the duty of the court to sustain the general demurrer to the petition, if, after overruling same, the effect of his subsequent action in sustaining special exceptions was to render the pleading free of the vice which made it subject to general demurrer, the error would thereby be shown to be harmless.

Assuming that the effect of sustaining the special exceptions was to strike from the pleadings all portions thereof to which the exceptions related, it appears that all of numbered paragraph III, subdivision (1) of paragraph numbered IV, and at least the first subparagraph of numbered paragraph V, were eliminated.

Bearing in mind that general allegations of negligence are in legal effect superseded by more specific allegations, let us consider what acts or omissions were alleged to be negligence and a proximate cause of plaintiff's injuries, after the eliminations mentioned. They may be briefly listed as follows:

a. "That the defendant company, its agents, servants and employees negligently and carelessly failed to stop the said street car at the place where it usually took on passengers and where plaintiff had stopped."

b. " * * * That the said street car * * * operated by A. B. Taylor, while acting in the scope of his employment, negligently and carelessly ran said street car against this plaintiff."

c. " * * * Motorman was negligent in that he did not keep the movements of said street car under control at the time of striking plaintiff, and that, had he had the switch or throttle by which air was applied to the brakes of said street car, on, while approaching the plaintiff, he could have stopped said street car and avoided hitting the plaintiff."

d. "The motorman violated an ordinance prohibiting operation of a street car at a greater rate of speed than was reasonable under the surrounding circumstances then existing (averred to be two miles an hour) in that he operated said street car at a rate of speed at the time of striking plaintiff and immediately before striking her, which was unreasonable under the surrounding circumstances (averred to have been greatly in excess of two miles an hour)."

e. "Motorman failed to sound his gong or bell * * * and thereby warn and indicate to plaintiff, as such would have indicated, that said motorman wanted plaintiff to get out of the way and did not intend to stop and accept her as a passenger at the point where she had stationed herself * * * and where said motorman had previously indicated by slowing down his car that he was going to stop and accept her; that the sounding of said bell would have indicated to plaintiff that the defendant motorman had changed his mind about the point where he was going to accept her as a passenger and would have enabled plaintiff to have reached a point of safety before she was cut off from said walk by said automobile."

f. "Motorman failed and neglected to keep a proper lookout for plaintiff when she was preparing and attempting to board said street car and to become a passenger thereon."

g. (1) "Motorman * * * failed to exercise due care with respect to keeping a lookout for persons, and in particular the plaintiff, who was approaching the street car track upon which the street car was then being operated," and (2) "motorman operating said street car having realized, or by the exercise of due diligence should have realized that plaintiff was in a position of peril and might be struck by the street car, the said motorman in charge of the operation of the said street car nevertheless failed to exercise due care in the use of all means at hand to avoid injury to the plaintiff."

**h.** "Operator of * * * street car actually saw, realized and discovered the position of peril and danger in which the plaintiff * * * was placed in time to have avoided striking the plaintiff· * * * but. * * * said motorman after having seen, discovered and realized the danger in which plaintiff was placed, failed to exercise care to stop said street car, or to apply the brakes and avoid striking the plaintiff, although he could have done so .without putting either himself or other passengers on said street car, or the street car itself, in danger of being injured."

These allegations must be considered in connection with others as follows: "* * That plaintiff then saw a street car approaching * * * that she was walking into the street to signal, and did signal same to stop * * *· that as plaintiff signaled to said street car, she observed an automobile, which was driven by one John Key ·* * * attempting to pass the said street car * * * that she was standing at the regular stopping place * * * that she stepped upon the railway tracks of the defendant company and signaled the motorman to stop; that she stepped upon said railway tracks to prevent any danger of being hit by the said automobile * * * that the defendant's motorman, without sounding his bell or signaling plaintiff, after slowing down his car to accept her as a passenger and proceeded on toward said trunk railway track with the purpose of requiring plaintiff, when he stopped for said railway track, to walk from the usual and customary place where he had been accepting her as a passenger and to board said street car at a point five feet east of said trunk railway track." All the various acts or omissions alleged as negligence (including those eliminated by the special exceptions) were averred to be proximate causes of the injuries.

■ It is apparent from the foregoing that fatal inconsistencies remained after the action of the court in sustaining the special exceptions. Allegations of negligence in failing to stop the street car at the usual place, and negligence in running the street car against the plaintiff, were superseded by more specific allegations of (a) failing to keep a proper lookout for plaintiff, and (b) failing to keep the movements of said street car under control. The latter was in turn limited to failure to have the air control switch or throttle on, while approaching the plaintiff. Allegations of failure to op-

erate the street car at a reasonable rate of speed was nullified, as a proximate cause of the injuries, by allegations that "the motorman could have stopped· the said street car and avoided hitting plaintiff," the failure to do which, was alleged to be a proximate cause of the injuries. Allegations of the motorman's failure to sound his gong or bell were rendered wholly immaterial in view of the allegations that plaintiff was aware of the approaching street car. These allegations. show that the motorman had full control of the car, and the complaint is made that he purposely changed his mind about stopping at the place where plaintiff intended to board the car after indicating a purpose to do so, and decided to stop something like fifty feet or more at the intersection of the street car track with the trunk railway track. In other words, according to some of the allegations, when the street car struck the· plaintiff it was because it was running too · fast and was out of control, the brakes were not applied, or the motorman did not see the plaintiff; according to others, all he had to do was apply the brakes; he did see the plaintiff, and was proceeding purposely to make the stop near the trunk railway tracks. Not a single ground of negligence is alleged but that is denied, as a possible cause of the injuries, by one or more other allegations, unless it be negligence based upon discovered peril, which we will next notice.

■ Here in the beginning we are confronted with an allegation that the motorman "having realized *or by the exercise of due diligence should have realized that plaintiff was in a position of peril.*" (Italics ours.) By no liberality of construction can this be said to· be a positive allegation that the motorman saw and realized the peril. It shows that the pleader considered that the legal equivalent of the fact that the motorman saw and realized the peril was that by the exercise of due diligence he should have realized that plaintiff was in a position of peril. Mere repetition thereafter that the motorman saw and realized the peril, considered in connection with the above, could not have the effect to make the essential allegation positive. The alternative first expressed would still be implied "or by the exercise of due diligence should have been realized" etc. As said by the Supreme Court in Ewing v. Duncan, 81 Tex. 230, 16 S.W. 1000, 1002: "Courts sit to try causes upon positive averments, and not to hear and determine issues presented

by allegations which affirmatively show that the pleader is in doubt as to the truth of the matter alleged."

But, aside from the above, it so happens in this case that the only purpose which allegations of negligence based upon discovered peril could serve would be to render unvailing to the defendant the existence of possible contributory negligence on the part of the plaintiff. This is so because granting that there was discovered peril, there was, as plainly appears from the allegations of plaintiff's petition, nothing that the defendant's motorman could have done to prevent the injury except such as was also alleged as primary negligence and the proximate cause of the injuries. What could he have done other than to sound the gong or bell and apply the air to stop the car? Independently of discovered peril, the failure to do these things was alleged as acts of primary negligence, and as a proximate cause of the injuries. As we have seen, all of these allegations were contradicted by other allegations. Application of the principles discussed in the original opinion compels us to hold that the effect of sustaining the special exceptions was not such as to render harmless the error of the court in overruling the general demurrer. It is, therefore, our conclusion that the motion for rehearing should be overruled, which is accordingly so ordered.