## W. T. WAGGONER ET AL. v. WISE COUNTY.

Delivered November 27, 1897.

1. **Commissioners Court—Failure to Record Order—Effect.**

An order of the Commissioners Court relating to the sale of school lands is not void because of the clerk's failure to enter it in the minute book, as required by Revised Statutes, article 1554.

2. **County School Lands—Sale—Security—Power of Commissioners Court.**

The Commissioners Court, in the exercise of the power conferred by the Constitution, article 7, section 6, to sell or dispose of school lands, may accept the note and deed of trust of an assignee of the original purchaser of the land under executory contract, in lieu of the assignor's note secured by vendor's lien.

APPEAL from Wise. Tried below before A. J. BOOTY, Esq., Special Judge.

*R. E. Carswell,* for appellants.—1. The order of the Commissioners Court, though irregular in not having been entered upon the minutes of said court, was valid and binding upon the county. Boydston v. Rockwall Co., 86 Texas, 239; Albright v. Allday, 37 S. W. Rep., 651.

2. If the Commissioners Court had the authority, its action in accepting Jamison's note in lieu of the note sued on fully discharged appellants from liability thereon. Morrison v. Barry, 30 S. W. Rep., 376; Bank v. Gatewood, 39 S. W. Rep., 509; 3 Pom. Eq., sec. 1206; Albright v. Allday, 37 S. W. Rep., 651.

*Spencer & Basham,* for appellants Halsell.—The Commissioners Court, at the time it accepted Jamison's note in lieu, discharge, and satisfaction of the note sued on, acted within the scope of its authority. Const., art. 7, sec. 6; Rev. Stats., arts. 1550, 795; City of Brenham v. Water-works, 4 S. W. Rep., 149; Falls County v. Delany, 11 S. W. Rep., 492; Albright v. Allday, 37 S. W. Rep., 646; Smissen v. State, 9 S. W. Rep., 112; Jernigan v. Finley, 38 S. W. Rep., 24; Boydston v. Rockwall Co., 24 S. W. Rep., 272; Collinsworth Co. v. Myers, 35 S. W. Rep., 414; Milam v. Bateman, 54 Texas, 165; Cool. on Const. Lim., pp. 237-277; Bishop on Contracts, pp. 241, 850, 867; Bldg. and Loan Assn. v. Hardy, 86 Texas, 610.

*Bullock & Tankersley* and *Buckaloo & Clendenen,* for appellee.—The Commissioners Court of Wise County was without power to accept the note and mortgage of Jamison in lieu of the note sued upon, and to discharge and release said Waggoner and Halsell from liability on the note sued on, and their undertaking to so release said Waggoner and Halsell was void. Const., art. 3, sec. 55, art. 7, sec. 6; Bland v. Orr, 39 S. W. Rep., 558; Rev. Stats., art. 4271.

HUNTER, ASSOCIATE JUSTICE.—This suit was brought by plaintiff Wise County, January 11, 1897, against W. T. Waggoner, Mrs. Julia Francis Halsell and her husband, H. H. Halsell, Maud Mitchell and her

husband, James Mitchell, Annie E. Simmons and her husband, W. T. Simmons, Furd Halsell, Mary Joe Halsell, Glen Halsell, and David Jamison. The above named Julia Francis Halsell is the surviving wife of J. G. Halsell, hereinafter mentioned, but now deceased. Mrs. Maud Mitchell and Mrs. Annie Simmons, above named, and Furd, Mary Joe, and Glen Halsell, are the children and heirs at law of the aforesaid J. G. Halsell, deceased.

The suit is founded on a promissory note made and executed by defendant W. T. Waggoner and the said J. G. Halsell, deceased, dated the 23d day of January, 1883, payable to the order of Wise County, for the sum of $32,309.60, due and payable ten years from date thereof, with interest thereon from date until paid at the rate of 6 per cent per annum, said interest to be paid annually on the 1st day of July of each year. The consideration of said note is 17,712 acres of the Wise County school lands, situated in Haskell County, which was, at the time of the execution of the note aforesaid, conveyed by the county aforesaid to defendant W. T. Waggoner and said J. G. Halsell; and to secure the payment of said note, a vendor's lien was retained in the deed of conveyance aforesaid. Plaintiff seeks to recover on this note, and to enforce the vendor's lien against said land.

The defendants, as a defense, set forth and relied upon the following substantial grounds and facts, to wit: That after the purchase of the lands aforesaid, to wit, on the 2d day of January, 1886, defendant W. T. Waggoner purchased from J. G. Halsell, deceased, his (Halsell's) one-half interest in said land, and took from him a quitclaim deed; that on the 1st day of January, 1886, defendant Waggoner sold and conveyed all of said lands to M. O. Lynn, providing in the deed that Lynn therein assumed the payment of the note sued on; that on the 22d day of April, 1887, said Lynn, by deed with covenants of general warranty, conveyed said lands to defendant David Jamison, the deed providing that Jamison, as part consideration, assumed the payment of the note sued on; that the plaintiff's Commissioners Court, with full knowledge of the transaction above stated, and without the knowledge or consent of defendants, took from the defendant Jamison, on the 23d day of January, 1893, in lieu of the note sued on, and in discharge and satisfaction of same, the said Jamison's note for a like sum, due and payable five years after date thereof; and that to secure the payment of the note aforesaid, executed by defendant Jamison, the said Commissioners Court accepted from said Jamison a deed of trust that day executed to J. T. Johnson, then acting county judge of Wise County.

The District Court found the following conclusions of fact, which we adopt as undisputed:

"1. On the 23d day of January, 1883, the plaintiff county, through the Commissioners Court, sold to J. G. Halsell and W. T. Waggoner the four leagues of land described in plaintiff's petition, and on which plaintiff prays a foreclosure. Plaintiff conveyed said land to said Waggoner and Halsell by a deed in which a vendor's lien was retained to secure the

payment of the note sued on. Said vendees executed and delivered to plaintiff their promissory note for said land, which note is as follows, to wit:

" '$32,309.60.                    DECATUR, January 23, 1883.

" 'Ten years from date, we or either of us promise to pay to the order of Wise County, Texas, the sum of thirty-two thousand three hundred and nine dollars and sixty cents, with interest thereon from date till paid, at the rate of 6 per cent per annum; said interest to be paid annually on the 1st day of July of each year; and it is agreed, that if any installment of interest is not paid when due, then the whole sum, principal and interest, shall be considered as due, and said Wise County may recover the same.

" 'This note is given as a part payment for the Wise County school lands, situated in Haskell County, and this day conveyed to us by the agent of said county.

'J. G. HALSELL,<br>'W. T. WAGGONER.'

"2. On the 2d day of January, 1886, J. G. Halsell, by a quitclaim deed, conveyed his undivided one-half interest in said land, being that described in plaintiff's petition, to W. T. Waggoner. Said deed also conveyed other lands.

"3. On the 1st day of January, 1886, W. T. Waggoner conveyed said lands, together with other lands, to M. O. Lynn. In the deed to Lynn it was provided that Lynn should assume the payment of the note sued on as part consideration for said lands.

"4. On the 22d day of April, 1887, M. O. Lynn, by a deed with covenants of general warranty, conveyed said lands to David Jamison, together with other lands, in which deed Jamison assumed the payment of the note sued on as part of the consideration for said lands.

"5. The annual installments of interest provided for in the note sued on were paid to the 1st of July, 1895, and were paid by Jamison after his purchase of said land. The last installment was paid on August 15, 1895, but included interest only to the first of July. The last installment is indorsed on a note given by said Jamison to the county treasurer of Wise County, as shown in the sixth finding of fact.

"6. That the note sued on matured on January 23, 1893. That in November of 1892 negotiations began between David Jamison and the Commissioners Court of plaintiff, for the release of the makers of the note sued on, by taking Jamison's note in lieu of it; that these negotiations continued till July 1, 1893, when said Jamison executed to plaintiff's treasurer his note for a like sum as that contained in the note sued on, together with a mortgage on the lands sold by plaintiff to Halsell and Waggoner, said note due five years from date, and bearing interest at 6 per cent, payable annually, a copy of which is given in the eighteenth finding of fact herein. Said mortgage was given to J. T. Johnson,

County Judge of Wise County, and was to secure the note given by Jamison. That the note sued on was then and there in the possession of the treasurer of plaintiff, and has ever since been in his possession, till by him delivered to the counsel of plaintiff to bring this suit.

"7. That while said note herein sued upon was retained by said treasurer, the Commissioners Court of plaintiff regarded said note as settled by the note of Jamison and the makers released, and no longer liable thereon, and looked to the note and mortgage of said Jamison as the source of security from which plaintiff was to realize payment for its lands sold to Halsell and Waggoner.

"8. That the note sued on is unpaid, together with interest thereon from July 1, 1895.

"9. That at the time plaintiff took the note of Jamison in lieu of the note sued on, said land was worth the amount due on said note, and that Jamison would have paid said note if it had been demanded by plaintiff; that the Commissioners Court thought it best to keep the money due the plaintiff secured by said lands, and for that reason took the note of Jamison; that said lands have since said time shrunken in value, and are not worth the amount due on said note.

"10. That J. G. Halsell died about April, 1886, leaving an estate worth not far from $500,000; that his surviving wife, Julia Halsell, has since intermarried with H. H. Halsell; that J. G. Halsell left a will, which has been probated; that in said will his wife, Julia Francis, was made executrix; that no action was to be taken in the probate court other than the probate of the will and the return of an inventory, etc.; that the executrix was an independent one, and she was to so continue to manage said estate till her marriage, and at her marriage she was to cease to be such executrix, and Hon. J. W. Patterson was to assume her place of executrix; that the estate has been partitioned, five-tenths thereof going to the said surviving wife, and one-tenth to each of the five children of said deceased, whose names are Annie E. Simmons, wife of W. T. Simmons, Maud Mitchell, wife of James Mitchell, Furd Halsell, an adult son, and Mary Joe and Glen Halsell, the last two named being minors, without any guardian of their estates, their estates being in the hands of Hon. J. W. Patterson, as trustee, by the terms of the will of J. G. Halsell, deceased. Mrs. Julia Francis Halsell married H. H. Halsell, June, 1894.

"11. That defendant Waggoner and the estate of J. G. Halsell, deceased, are and always have been solvent, since the making of the note sued on.

"12. That neither W. T. Waggoner nor the estate of said Halsell was in any way concerned with the transaction by which the note and mortgage of Jamison were taken in lieu of the note sued on; that in November, 1892, Jamison told said Waggoner that he (Jamison) had made an arrangement with plaintiff by which said Waggoner was no longer liable on the note sued on. He (Waggoner) was anxious that the arrangement should be effected. Neither did Julia Francis Halsell nor any of her

·children know anything of said transaction until after consummation of same, nor assent to same. Waggoner's only knowledge of said transaction was what was told him by Jamison, and he supposed that Jamison had in fact then procured his release.

"13. That at the present time Jamison is insolvent, and the lands described in plaintiff's petition have depreciated in value since January 23, 1893.

"14. That no improvements have been made upon the lands described in plaintiff's petition.

"15. That the transaction between plaintiff and Jamison set out in the sixth finding was had without the knowledge or assent of defendants, or either of them, save Jamison.

"16. That the treasurer of plaintiff made annual reports to the Commissioners Court of the condition of the school fund of plaintiff, and in said report the annual interest payments made by said Jamison on said note were reported as having been collected from said Jamison, as interest on said note, which said reports were approved by formal orders of said court.

"17. That the sale and conveyance from Lynn to Jamison was procured by defendant Waggoner, the said Lynn having become insolvent and unable to pay the note sued on, which he had assumed in the deed from Waggoner to him.

"18. I find that the following is a correct copy of the note given by David Jamison, intended by the Commissioners Court to be in lieu of W. T. Waggoner's note:

" 'No. 287. Vendor's Lien Note Secured by Deed of Trust.
" '$32,309.60. No. 1.
" 'DECATUR, TEXAS, July 1, 1893.

" 'Five years after date I promise to pay to Jno. M. Gibbs, county treasurer of Wise County, and his successors in office, the sum of thirty-two thousand three hundred and nine dollars and sixty cents, with interest thereon from date till paid at the rate of 6 per cent per annum, the interest payable annually as it accrues, at Decatur, Texas; one-half the same being in payment for a certain lot or parcel of land, of four leagues, 17,712 acres, situated in Haskell County, Texas, known as Wise County school lands.

" 'This note is given in lieu of a certain note of $32,309.60, executed on January 23, 1883, by J. G. Halsell and W. T. Waggoner.

" 'To secure the payment of which a vendor's lien is reserved in said conveyance, and as additional security to this note I have this day executed a deed of trust on said land above referred to.

· " 'It is understood and agreed that failure to pay this note or any installment of interest thereon when due, shall, at the election of the holder of them or any of them, mature all notes given by David Jamison to said John M. Gibbs, county treasurer, in payment for said property, and it is hereby especially agreed, that if this note is placed in the hands of an

attorney for collection by suit, I agree to pay 5 per cent additional on the principal and interest then due, as attorney's fee.

" 'DAVID JAMISON.'

"19. That no record of the transaction by which the note and mortgage of Jamison were taken in lieu of the note sued on was ever entered on the minutes of the Commissioners Court of plaintiff. That said arrangement was consummated orally, but with said court in actual, open, and regular session, all the members of said court voting in favor of said settlement, save and except one of the commissioners, who gave a negative vote. The Commissioners Court of plaintiff, at and prior to the acceptance of the note and mortgage of Jamison, in lieu of the note sued on, knew that Jamison had assumed the payment of the note sued on in his purchase of said land from Lynn."

The learned special judge who tried the cause below upon these facts concluded that the Commissioners Court had no power to accept the Jamison note and deed of trust in lieu of the Waggoner and Halsell note and vendor's lien; and whether it had such power seems to be the principal question involved in this appeal, as indicated by the assignments of error and briefs. In argument, however, it was contended by appellee's counsel that, as the Commissioners Court made no entry in the minute book of the court of its order releasing appellants from their note, and accepting Jamison's note and deed of trust in lieu thereof, the action of the court was, for this reason, a nullity; and we will briefly notice this point first.

Article 1853 of our Revised Statutes, which relates to the records of the county court in probate proceedings, requires that "all decisions, orders, decrees, and judgments shall be entered on the records of the court," and expressly declares that any not so entered shall be a nullity.

Article 1554 relates to the minutes of the commissioners court, and provides: "The court shall cause to be procured and kept in the clerk's office suitable books in which shall be recorded the proceedings of each term of the court, which record shall be read over and signed by the county judge, or the member of the court presiding, at the end of each term, and attested by the clerk."

Our Supreme Court noticed the difference in these two articles, and held in Ewing v. Duncan, 81 Texas, 235, that if the court actually passed the order it would not be void under this article merely because the same was not entered of record. Here the facts are undisputed that the court officially passed the order by a vote of four to one, and that all parties had for several years acted on it, probably overlooking the fact that the clerk had failed to enter it in the minutes. We are of the opinion that it was not for this reason void, but that the fact that it was an order made by the court sitting in term time as a court is sufficient to release and discharge appellants, if the court had the power to make such an order.

As to this power our Constitution provides in substance, (1) that the

lands granted to each county are of right the property of the counties respectively; (2) that the title thereto is vested in the counties; (3) that each county, through its commissioners court, may sell or dispose of them in such manner as they may provide; and (4) that the lands and proceeds thereof when sold shall be held by such counties alone in trust for the benefit of the public schools therein, and shall be invested in United States bonds, State or county bonds, or such other securities, under such restrictions as may be prescribed by law, the counties to be responsible for all investments, and the interest and revenue only to be used as available fund. Const., art. 7, sec. 6.

Our Revised Statutes provide: "Each county may sell or dispose of the lands granted to it for educational purposes, in such manner as may be provided by the commissioners court of such county; and the proceeds of any such sale shall be invested in bonds of the State of Texas, or of the United States, and held by such county alone as a trust for the benefit of public free schools therein, only the interest thereon to be used and expended annually." Art. 4271.

Neither the Constitution nor this article attempts to provide for the manner or terms of sale. All these are left to the commissioners court, and this court, it seems, is made, in effect, the general trustee for selling or otherwise disposing of the lands, upon such contracts, terms, and conditions as it may deem proper to adopt or provide, the county, of course, being always responsible for the corpus of the fund. It has been held by our Supreme Court that it may lease the land for a long or short term, and if the terms of the lease are violated, or default is made in the payment of the rent as provided for in the lease, the commissioners court may declare or consider the rights of the lessee as forfeited, and re-lease the same to another party. Falls Co. v. Delaney, 73 Texas, 463, 11 S. W. Rep., 492.

The commissioners court can not give the land away, nor can it dispose of it or the proceeds of the sale thereof for any other than the use and benefit of the public schools of the county. Pulliam v. Runnels Co., 79 Texas, 363. And in Boydston v. Rockwall Co., 86 Texas, 238, Justice Gaines, in delivering the opinion of our Supreme Court, touching the construction of article 986m, Sayles' Civil Statutes, as to the powers therein given to the commissioners court to invest the proceeds of the sale of such lands, says: "The statute does not restrict the general power of the court over the investment of the school fund." And he then declares that the court may exchange an existing investment of the fund or a part of it, for another investment, which, in the opinion of the court, should be deemed more desirable.

It has always been held in this State, where land is conveyed, and in the deed of conveyance a vendor's lien is expressly retained to secure the unpaid purchase money, that, as between the parties, the vendee takes only an equitable and conditional title, and that the superior legal title remains in the vendor until the purchase money is paid, upon the happening of which event his deed becomes absolute, and the vendee's title

perfect.   Until the purchase money is fully paid, however, the contract of sale remains in its nature executory, and the vendor has his right, upon default of the vendee in the payment of the purchase money, to elect either to sue upon the debt and have foreclosure of the lien and sale of the land in satisfaction thereof, or to recover back the land in trespass to try title, the equities, of course, being in this case adjusted in the same suit.

The deed in this case being of the character of an executory contract of sale, we can see no reason why the Commissioners Court of Wise County, whose general power over this fund is incontrovertable, should be deprived of this valuable right of election which is clearly vested in every other vendor, and is often exercised with most beneficial results. The action of the Commissioners Court in this case was simply the exercise of this right and power.   The transaction was not a reinvestment of the proceeds of the sale of the lands, for these proceeds had never been realized, default having been made in the payment on account of the release; but it was, in effect, an election on the part of the vendor trustees to reclaim the land and sell it to another party upon apparently more advantageous terms, as the security could be more easily, quickly, and cheaply foreclosed.

It is probable that Waggoner and the Halsells could have resisted this action, had they not conveyed their interests through Lynn to Jamison, but having done this, and the Commissioners Court having consented thereto, and ratified the transaction by accepting the note and deed of trust of Jamison, giving to him a five years extension of the time of payment, in lieu of the past due note of Waggoner and Halsell, there was no one to oppose the court's action in making the new sale, as it were, to Jamison.

The Constitution and statute have placed this power and this discretion in the hands of the commissioners courts, and we think wisely.   If they abuse them, and the fund is lost or impaired, the county, under the provisions both of the Constitution and of the statute, is responsible, and bound to make the fund whole.

We are therefore of opinion that the judgment in this case against appellants ought to be reversed and rendered in their favor, but in all other respects affirmed; and we make the order accordingly.

*Reversed and rendered.*

Writ of error refused.