MARSHALL v. SIMMONS et al.

(Court of Civil Appeals of Texas. Galveston. June 30, 1913.)

1. HIGHWAYS (§ 113*)—CONTRACTS FOR CONSTRUCTION—POWER OF COUNTY BOARD.

Before the passage of the road act of March 31, 1913, giving the highway commissioners of L. county power to contract as to road construction and maintenance, the commissioners' court of that county could contract with an individual for the transportation of road material, and that the individual should be paid one-half of the difference between the cost under a special agreement with a railroad company and the cost at regular rates.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 348–352, 355; Dec. Dig. § 113.*]

2. HIGHWAYS (§ 113*)—STATUTES—RETROACTIVE EFFECT—CONTRACTS FOR CONSTRUCTION.

The passage of Act March 31, 1913, did not affect lawful contracts made by the commissioners' court prior to that date.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 348–352, 355; Dec. Dig. § 113.*]

3. COUNTIES (§ 121*)—CONTRACTS BY COUNTY BOARDS—REQUISITES.

Under Rev. St. 1895, art. 1554, requiring the proceedings of the commissioners' court to be recorded, a contract for the transportation of road materials need not be in writing, provided it was made by the commissioners' court acting as a municipal body, but it can be proved only by the written proceedings of the court.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 183; Dec. Dig. § 121.*]

4. COUNTIES (§ 121*)—CONTRACTS—FORMAL REQUISITES.

Where the commissioners' court, on April 8th, entered an order approving a written contract executed that day, which recited that an oral contract containing the same provisions had been entered into on March 3d, the entry of such an order is equivalent to the entry of an order nunc pro tunc by the court to the effect that a contract had been made on March 3d, and is sufficient to establish that contract by the records of the court.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 183; Dec. Dig. § 121.*]

5. INJUNCTION (§ 118*) — PLEADING — PETITION.

A petition to restrain the carrying out of such a contract, on the ground that it was made subsequent to the enactment of Act March 31, 1913, giving the power to make such contracts to the highway commissioners, which did not deny that the oral agreement was entered of record by the commissioners' court on March 3d, is insufficient, since a petition for injunction must negative every reasonable inference which might authorize the defendant to do the acts sought to be restrained.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 223–242; Dec. Dig. § 118.*]

6. INJUNCTION (§ 118*)—CONTRACTS BY COUNTY BOARDS—FAILURE TO ENTER ON MINUTES.

The petition should also deny that the contract was in fact made on March 3d, since the failure to enter it upon the minutes of the proceedings did not render it void.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 223–242; Dec. Dig. § 118.*]

Appeal from District Court, Liberty County; J. Llewellyn, Special Judge.

Action by J. H. Marshall against I. B. Simmons and others. From an order of the district judge refusing a temporary injunction, plaintiff appeals. Affirmed.

E. B. Pickett, Jr., of Liberty, for appellee.

REESE, J. This is an appeal from an order of a district judge in chambers, refusing a temporary injunction. There is no brief for appellant nor assignment of errors. The record contains the plaintiff's petition, the order of the judge, and the appeal bond. The only question presented is whether the district judge erred in refusing the temporary injunction upon the allegations of the sworn petition. Much has to be taken for granted in dealing with the petition. For instance, there is .no prayer for temporary writ. We are left to gather from the order of the court that he refused it.

The plaintiff in the petition is J. H. Marshall, a resident property owner and taxpayer of Liberty county, Tex. The defendants are the county judge and county commissioners, composing the commissioners' court of said county, the county treasurer, all of whom are named, and W. A. Myrick. Substantially the allegations of the petition are as follows, stating the facts in the order of time:

Under the authority of an election held for that purpose, bonds had been issued and sold to provide a fund for improving the roads of precincts 1 and 4 of said county. The commissioners' court had entered into a contract with W. D. Haden, by the terms of which Haden was to deliver to the county, for the purpose of improving said roads, 60,000 cubic yards of mud shell. The shell was to be delivered free on board cars at Sabine or West Port Arthur. The flat rate of transportation was 55 cents per ton, but the commissioners' court made a contract with the T. & N. O. Ry. Company whereby for $100 per day the railroad company was to furnish an engine and crew and 80 flat cars, to be operated by the railroad company in the transportation of the shell. The petition then alleges that on April 8, 1913, the commissioners' court entered into a certain contract with W. A. Myrick, a copy of which is attached as Exhibit A to the petition, but there are no allegations otherwise as to the terms of said contract. It is stated that the contract is of record in the minutes of

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

the commissioners' court. Book 7, pp. 114 to 117. As a part of said exhibit appears the following order of the commissioners' court:

"The State of Texas, County of Liberty.

"Whereas, the county commissioners' court of Liberty county, Tex., has this day entered into a written contract with W. A. Myrick, of Jefferson county, Tex., with reference to the transportation of oyster shell from Sabine Pass or West Port Arthur, Tex., for road districts Nos. 1 and 4, Liberty county, Tex.

"Resolved, that the said contract be and the same is hereby approved and confirmed, and is ordered to be spread upon the minutes of this court.

"Recorded Commissioners' Court Docket Book 7, on pages 114, 115, 116, and 117, at a special session on the 8th day of April, 1913."

After reciting the contract with Haden and with the railroad company referred to, which latter contract is stated to have been procured by the efforts of Myrick, and stating that the flat rate on said shell was 55 cents per ton, the contract proceeds:

"Whereas, the parties of the first part (i. e., the commissioners' court), on said 3d day of March, 1913, did enter into a verbal agreement with the party of the second part (i. e., Myrick) in the terms hereinafter set forth; whereas, the party of the second part has been, since the 3d day of March, 1913, engaged in fulfilling and carrying out said verbal agreement and promoting the purposes thereof, and it is now deemed advisable to reduce said verbal agreement into writing."

The terms of the contract are then set out, which briefly and so far as is material to a decision of this case, and omitting immaterial details, are as follows: The commissioners' court employed Myrick to take charge of the operation of the said train in the transportation of the shell, to look after the proper equipment of the cars, and have them properly equipped. For his services Myrick is to be paid as follows: After deducting certain expenses, Myrick is to have one-half of the amount that is saved by the county by said contract with the railroad company for cars at $100 per day, being the difference between that amount and the flat rate of 55 cents per ton. If there turns out to be no saving, Myrick is to receive nothing. If the cost should turn out to be more under the contract than under the flat rate, Myrick is to pay to the county the difference, and is to execute in 20 days a bond in the sum of $10,000 to secure the same. It was alleged that on May 13th the commissioners' court caused to be issued to Myrick two warrants for $1,000, each of which had been paid by the county treasurer. It was alleged that the commissioners' court had no authority to make said contract with Myrick, and that the same was null and void for the following reasons:

"First. By the terms of said contract the commissioners' court of Liberty county have entered into a gambling contract with the defendant W. A. Myrick, and that said defendants, heretofore alleged to have entered into said contract, have used the funds of road districts Nos. 1 and 4 for an illegal and unlawful purpose.

"Second. Said contract is null and void because it is against public policy, and indirectly gives to the defendant W. A. Myrick a rebate on the freight charges of hauling shell from Sabine Pass to the county of Liberty, which is contrary to the laws of this state.

"Third. Said contract is null and void because the commissioners' court were without authority, on the day and time of the said agreement and contract so entered into with the defendant W. A. Myrick, to make any contracts for or on behalf of road districts Nos. 1 and 4. for the reason that the Thirty-Third Legislature of the state of Texas enacted a special road law for Liberty county, which went into effect on the 31st day of March, A. D. 1913, and that by the terms of said special road law for Liberty county the making and entering into of contracts by or on behalf of any road district was conferred upon another agency, to wit: A county road superintendent and eight highway commissioners. Section 14 of the said special road law provides: 'That the highway commission in the construction, maintenance or repair of any public or any part of any public road or roads or bridges in said county, or any defined road district therein, shall have all such work done by contract; all contracts for the building of any bridge or the improvements of any road or the purchase of any material, shell, gravel, or the purchasing or doing of anything whatsoever on, upon, or for a public highway shall be awarded to the lowest responsible bidder, after sealed bids have been invited and advertised for; that bids for the doing of anything whatsoever upon the public highway shall first be invited by publishing a notice or notices in some newspaper in the precinct or defined road district, where the contract for work is to be performed.' That said contract is hereto attached and marked Exhibit A; that the performing of said duties and obligations contained in said contract, which is hereto attached and marked Exhibit A was not advertised for as provided by section 14 of said special road law, and that no notice or notices were published inviting said bids as required by said act."

It was further alleged that at the suit of one F. A. O'Neil a mandamus had been granted by the district court, ordering the said members of the commissioners' court to order an election for county road superintendent and eight highway commissioners, as

provided in said act; that the respondents have prosecuted an appeal from said order purely for delay, and to enable the county commissioners to expend the county funds and carry out the said contract with Myrick. The judgment in the mandamus proceeding is set out as an exhibit to the petition. In his order refusing the injunction, the judge gave as his reasons that the contract was a valid contract within the power of the commissioners' court to make; that it was not a gambling contract, but rather one of insurance whereby the commissioners' court sought to insure the county against a possibly heavy expense in the shipment of the shell, and at the same time giving itself an opportunity possibly to reduce the expense. No reference is made to the effect of the said special road law for Liberty county, referred to in the petition. The injunction prayed for was to restrain all parties from carrying out said contract.

[1] Unless their authority was affected by the said road law (as to which later), the contract, no matter how improvident and disadvantageous to the county and advantageous to Myrick, in the absence of actual fraud, which is not charged, was one which the commissioners' court had the power to make. That it seems to have been an exceedingly advantageous contract to Myrick, as shown by the payment of the $2,000 to him, while it might be a serious reflection upon the business judgment of the members of the commissioners' court, for which the remedy is elsewhere than by appeal to the district court, does not affect the question of the power of the court to make it, and having made it to carry it out.

[2] The question remains as to how this power of the commissioners' court was affected by the passage of the special road law. The special road law was passed by the Thirty-Third Legislature with the emergency clause, and went into effect on the 31st of March, 1913, according to the allegations of the petition. Assuming that it from this time took away from the commissioners' court the power to make such a contract as the one here referred to, it is not contended, and could not be contended, that it affected lawful contracts made by the commissioners' court, with regard to roads, before the passage of the act.

[3] The written contract made after the passage of the act on April 8, 1913, is only, as appears on its face, a reduction to writing of a verbal contract, embracing the identical terms of the verbal contract entered into by the commissioners' court with W. A. Myrick on March 3, 1913. This is stated in the written contract, which is by formal order of the commissioners' court on April 8th approved and ordered spread upon the minutes of the court, which was done. This contract was not required to be in writing, provided it was made by the commissioners as a municipal body. The statute re-

quires that the proceedings of the commissioners' court shall be recorded in a book kept for that purpose. R. S. 1895, art. 1554. It has been held that the evidence to establish a contract, which could only obtain legal sanction from the action of the commissioners' court, must be contained in the written proceedings of the court. Polly v. Hopkins, 74 Tex. 145, 11 S. W. 1084; Bryan v. Page, 51 Tex. 532, 32 Am. Rep. 637.

[4] As to the effect of a failure to record an order properly made by the commissioners' court, however, the law seems to be settled by the Supreme Court in Ewing v. Duncan, 81 Tex. 230, 16 S. W. 1000, following Brown v. Ruse, 69 Tex. 589, 7 S. W. 489, and holding that a failure to enter an order made by the commissioners' court on its record does not render such order void. Waggoner v. Wise County, 17 Tex. Civ. App. 220, 43 S. W. 836; Whitaker v. Dillard, 81 Tex. 363, 16 S. W. 1084; Vogt v. Bexar County, 5 Tex. Civ. App. 272, 23 S. W. 1047; Jackson-Foxworth Lumber Co. v. Hutchinson County, 88 S. W. 412.

[5] With regard to allegations necessary in a petition for injunction, the rule is stated in Gillis v. Rosenheimer, 64 Tex. 246, that "the petition must negative the fact that the defendant may have the right or remedy, the exercise or assertion of which is disputed, and which a court of equity is invoked to prevent him from maintaining. The petition for injunction should state all, and negative all, which is necessary to establish a right." Quoting from Harrison v. Crumb, White & W. Civ. Cas. Ct. App. § 992: "The rule of pleading that the statements of a party are to be taken most strongly against himself is re-enforced in injunction suits by the further requirement that the material and essential elements which entitle him to relief shall be sufficiently certain to negative every reasonable inference arising upon the facts so stated; from which it might be deduced that he might not, under other supposable facts connected with the subject, thus be entitled to relief."

Applying these principles of law to the allegations of the petition, it appears that the commissioners' court entered upon its minutes, on April 8, 1913, an order approving the written contract executed on that day between that body and W. A. Myrick, and ordering the contract to be entered upon the record of its proceedings, which was done. This written contract recites that a verbal contract had been entered into between the commissioners' court and Myrick on March 3, 1913, identical in its terms with the written contract, but that it was thought advisable to reduce such verbal contract to writing. This showed by the records of the court that such verbal contract had been made by the court (as a municipal body) on the day named. It was equivalent to an entry nunc pro tunc of such action by the

court. But this is not all; it is not denied that this order was duly entered of record at the time it was made, which would have complied with the strictest requirements of the law. Seeking to enjoin the carrying out of the contract by injunction, on the ground ·that it was void, under the rule above quoted, it was necessary for the plaintiff to specifically negative this fact.

[6] Again, the petition does not negative the fact that such contract was in fact made, as stated by the court, on March 3, 1913, and even if not entered upon the records then such failure would not render the contract void, under the authority of Ewing v. Duncan, supra, and other cases cited. It necessarily follows that the plaintiff has failed to negative supposable facts which may have existed, the existence of which is suggested by the petition, and which would have made the contract one entirely within the power of the commissioners' court to make, at the time it was made, regardless of the effect of the special road law for Liberty county referred to, and which took effect March 31, 1913. In this view of the case it is not necessary to pass upon the question as to whether, after the passage of of that act, the commissioners' court had authority to make the contract referred to, or as to the constitutionality of such act.

Under the allegations of the petition the district judge did not err in refusing to grant the temporary injunction, and his order must stand.

Affirmed.