WOODS et al. v. EBERLING et al.
(No. 5297.)

(Court of Civil Appeals of Texas. San Antonio. July 1, 1914. On Motion for Rehearing, Oct. 21, 1914.)

1. SCHOOLS AND SCHOOL DISTRICTS (§ 37*)— ENLARGEMENT—SURVEY—FIELD NOTES—ENTRY.

Rev. St. 1911, art. 2276, provides that the commissioners' court shall cause to be kept in the clerk's office suitable books in which shall be recorded the proceedings of each term of the court which record shall be read over and signed by the county judge, or the member of the court presiding, at the end of each term and attested by the clerk. Held, that where it was desired to enlarge a school district, and after the the survey thereof, the field notes of the enlarged district were filed and adopted by the court, and a vote taken in the enlarged district, the proceedings were not void because the order adopting the field notes and enlarging the district was not formally entered on the court's minutes as provided by such section.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 60–65, 67; Dec. Dig. § 37.*]

2. SCHOOLS AND SCHOOL DISTRICTS (§ 37*)— ENLARGEMENT — COMMISSIONERS' ACTION — NUNC PRO TUNC ORDER.

Where an order of county commissioners adopting the field notes of a survey of an enlarged school district and creating the district in accordance therewith was inadvertently omitted from the court's minutes, the defect could be cured by a nunc pro tunc order.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 60–65, 67; Dec. Dig. § 37.*]

3. SCHOOLS AND SCHOOL DISTRICTS (§ 97*)— ENLARGEMENT—BOND ISSUE—PETITION FOR ELECTION.

Where a petition for an election to determine whether bonds should be issued by an enlarged school district was not presented to the county judge, whose duty it was to call the election, until after the new district had been created, it was immaterial that it was signed prior to that time.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 224–232; Dec. Dig. § 97.*]

4. APPEAL AND ERROR (§ 692*)—RULINGS ON EVIDENCE — EXCLUSION — BILL OF EXCEPTIONS.

A bill of exceptions to the exclusion of evidence must show what the witness would have testified if permitted to do so.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2905–2909; Dec. Dig. § 692.*]

Appeal from District Court, Guadalupe County; M. Kennon, Judge.

---

Suit by Adolph L. Eberling and others against J. M. Woods and others. Judgment for plaintiffs, and defendants appeal. Reversed and rendered.

J. M. Woods and H. M. Wurzbach, both of Seguin, for appellants. Dibrell & Mosheim, of Seguin, for appellees.

MOURSUND, J. The appellees, Adolph Eberling, Ferd Weyel, Jr., Gustav Weyel, Herman Weyel, Louis Uhr, Jacob Voight, and Otto Ikels, as contestants, filed this suit on August 6, 1913, against J. M. Woods, county judge of Guadalupe county, and Otto Mattfeld, Benno du Menil, Alfred Hartman, and W. M. McGee, county commissioners of said county, as contestees, questioning the validity of an election held July 1, 1913, in common school district No. 31 to determine whether bonds should be issued for the purpose of constructing and equipping a school building. Various grounds were alleged upon which the election was sought to be set aside, but it will only be necessary to state the two most important: (1) Because there was never any order made by the commissioners' court, in compliance with law, changing or enlarging common school district No. 31 as to embrace parts and portions of the six adjacent districts in which appellees resided and in which their property, subject to taxation, was located, and that therefore the election was illegal and void; (2) because the petition asking the county judge to order the election was not made and presented by the requisite number of legally qualified property tax voters of district No. 31 as attempted to be altered and enlarged by the court on May 31, 1913, or at any time prior thereto and subsequent to December 10, 1901, the date when said district was established, but on the contrary the petition was made, signed, and presented before any attempted alteration or enlargement of district No. 31 had been made by the commissioners' court, and that therefore the order for the election was void. Contestants alleged that they and 22 other legally qualified property tax paying voters, residing in the new territory attempted to be taken from the districts adjacent to No. 31 as established December 10, 1901, would have been entitled to vote at said election had the district been legally established containing such added territory, and would have voted against such bond issue, and the result of the election would have been that the bond issue would have been defeated. It was further alleged that the notices of the election did not apprise appellees that they were authorized to vote at said election, or that they had been placed in said district No. 31. As no contention is made as to the sufficiency of the pleadings, we will not state plaintiffs' allegations in detail. The answer of contestees consisted of a general denial of contestants' petition, and a recitation of all the proceedings relied upon to show a legal election. The court instructed a verdict in favor of contestants, upon the ground that the commissioners' court had never adopted an order enlarging district No. 31 before the order was made for an election therein to determine whether bonds should be issued. Judgment was entered in accordance with the instructed verdict.

By appropriate assignments appellants contend that the evidence was not sufficient to show the election invalid. On December 10, 1901, the commissioners' court of Guadalupe county entered an order upon its minutes transferring such county from the community system to the district system for school purposes, and dividing said county into districts. One of these districts was No. 31, to be known as the Marion district. On May 16, 1901, the commissioners' court of said county passed and entered on its minutes the following order:

"May 16, 1913. Ordered that the Marion school district No. 31 be surveyed and expenses paid out of the general fund."

At the term of court beginning May 26, 1913, and ending May 31, 1913, new field notes of district No. 31, prepared by Surveyor Stein, were recorded in the minutes of the court, Book E, beginning with page 137. No order accompanied these field notes in the minutes. Such field notes included lands which had theretofore been embraced in districts Nos. 25, 26, 27, 28, 29, and 30. The county clerk testified there was no file mark on said field notes, and his recollection was that they were recorded about May 31, 1913. He recorded the field notes at the request and order of the commissioners' court. No order was entered upon the minutes at said term with reference to districts 25, 26, 27, 28, 29, and 30. Hartman, county commissioner of the precinct in which district 31 was situated, testified that he made a motion that the court enlarge district No. 31 and have it surveyed; that he did not, at the time, state the field notes because Mr. Stein had to survey it first; that as soon as Stein got ready the members of the court, or at least a majority, went out with him and showed him where to start, and showed him where the lines were, and a couple of days afterwards the witness went out with him and told him; that the court was not in session out in the woods; that when Stein got through with the survey he made his report, which was read over in court and adopted. On June 7, 1913, J. M. Woods, county judge of Guadalupe county, made an order for an election to determine whether bonds should be issued in district No. 31, reciting that such order was made in response to a petition presented to him on May 31, 1913, and that the district was established on May 31, 1913. The only petition on file was signed only by residents of the old district No. 31, and bears the file mark June 7, 1913.

County Commissioner Hartman testified

169 SOUTHWESTERN REPORTER (Tex.

that under his direction and instructions the petition upon which the election was ordered was gotten up by residents of old district No. 31, and that such petition was signed and presented to the county judge before the attempted change in district No. 31 was made. J. B. Williams, county superintendent, testified that two petitions for an election in district No. 31 were delivered to him to be presented to the court, but he had no recollection of the first one being presented to the court; that the second one, the one upon which the election was ordered, was prepared by him some time between May 31st and June 7th. Notices were issued and posted in the old district and the election held at Marion on July 1, 1913. Said notices provided for an election to be held in "common school district No. 31 as established by the commissioners' court, on May 31, 1913, recorded in Book E, pages 137–139, of the minutes of said court," and further recited "that said election was ordered by the county judge of this county by order made June 7, 1913, and notice is given in pursuance of said order." The election resulted in favor of the issuance of the bonds by a majority of nine votes, the order declaring the result being passed and entered on July 7, 1913. There were 29 or 30 legally qualified property taxpaying voters, including contestants, who resided in the territory which was added to district 31 according to Stein's field notes. Five or six of these voted at said election, but none of the contestants voted. On July 17, 1913, the bonds were ordered issued and printed, and a tax levy made.

On August 23, 1913, and after this suit was instituted, the commissioners' court passed a nunc pro tunc order, reciting that at the May term, 1913, it was duly ordered by the court that school district No. 31 be redistricted; that the territory in districts 25, 26, 27, 28, 29, and 30 which was adjacent to No. 31 be added thereto; that Wm. Stein be employed to survey, under the direction of the court, said district 31, with such added territory from said other districts and to return to the court a plat and field notes of the enlarged district No. 31, including such additions to the same as were ordered and directed by the court; that afterwards Stein surveyed said district as ordered and returned plat and field notes to the court, which were inspected, approved, and regularly adopted by the court, and all of said districts were redistricted by the court so as to create said district 31, as it is described upon pages 137 to 139 of the minutes of said court, but the order redistricting the territory covered by said districts was inadvertently abbreviated and not entered in full upon the minutes. Said order, after such recitals, provided that the districts should be as had been ordered at said May term of court, and that district No. 31 should be established as shown by said field notes and

plat prepared by Stein, and that the order to that effect be entered nunc pro tunc.

[1] In taking up the questions of law we shall first consider the ground upon which the court based his peremptory instruction.

Article 2276, Revised Statutes 1911, reads as follows:

"The court shall cause to be procured and kept in the clerk's office suitable books in which shall be recorded the proceedings of each term of the court; which record shall be read over and signed by the county judge, or the member of the court presiding, at the end of each term and attested by the clerk."

[2] This article is construed not to render void an order made by the commissioners' court, but not entered upon the minutes. Marshall v. Simmons, 159 S. W. 91, and cases therein cited. In this case, therefore, if the recording of the field notes of the enlarged district No. 31 in the minutes of the court, which presumably were read over and approved as provided by the statute, did not constitute the adoption of such field notes and the creation of a district in accordance therewith, still, by the nunc pro tunc order entered on August 23, 1913, it is established that an order adopting said field notes and creating the district in accordance therewith was actually passed by the commissioners' court. We conclude that there was a valid order made by the commissioners' court enlarging school district No. 31, making same correspond to the Stein field notes recorded in the minutes of the court.

The argument advanced by appellee for requiring valid orders to be on record creating districts before bond elections are ordered therein is very convincing, and probably the statute should so provide, but we are merely following the statute as construed by our Supreme Court in holding that the order is valid, though not entered upon the minutes. In this case there was sufficient upon the minutes to put any one examining the same upon inquiry, if not satisfied from an examination of the order for the survey and the field notes entered in the minutes that the district was changed so as to correspond with said field notes.

[3] We will next consider appellees' contention that the judgment of the court should be sustained on the ground that the petition for the election was not sufficient in law. Unless the recital in the county judge's order for the election is conclusive as to the date when the petition was presented to him, it cannot be said, as a matter of law, that the petition was presented to him upon May 31, 1913, because it shows to have been filed on June 7, 1913, and there is a conflict in the testimony of Hartman and Williams upon the question whether the petition was signed before or after the creation of the new district. If it was presented to the judge on May 31, 1913, it is apparent from the testimony as to how the signatures were procured that some of the names were signed prior to the time the new district was

created, if it in fact was created on May 31, 1913, as the testimony of the clerk and the recitals in the order for the election and the notice of election indicate. But we do not think the mere fact that the petition was signed prior to the creation of the district would invalidate the petition if the same was signed for the purpose of procuring an election to be held in the enlarged district. It could be signed in advance with the understanding that it would be presented as soon as the district should be legally created. The petition does not state whether the election was sought to be held in the old district or the new one, and if the new district was created on May 31, 1913, and the petition presented the same day as is indicated by the county judge's recital in the order for the election, still it does not follow that the petition was presented prior to the adoption and creation of the new district. Hartman testified:

"We had this petition in our possession before we ever passed the order changing the district."

He denied that more than one petition was presented to the commissioners' court, and said:

"The district as enlarged has never presented a petition to the commissioners' court for a bond election."

According to his testimony he received the petition by mail after it had been signed by the other petitioners, and then signed it himself. He does not say when it was presented by him to the county judge, but we think the natural inference is that after he had the petition before the court and the district was created, he turned it over to the county judge. At least, there is no testimony to the contrary. The law does not require the petition to be presented to the commissioners' court, and if there was a second petition, it was not necessary that it should be presented to the court, but merely to the county judge. Surely Hartman did not mean that the petition he signed was intended for the purpose of calling an election in a precinct which he was actively engaged in abolishing. The fact that he told Bolton to have it signed only by residents of the old district, because they could not take any one from the new district on account of it not being adopted and surveyed, does not prove that he did not intend the petition for the new district, but merely that he thought it would be safer to get signatures of those residing in the old district, because there was some uncertainty as to the extent of the territory which would be added thereto. There is nothing in the record showing that the signers of the petition did not fully understand the situation, or that Hartman was not authorized to act for them in presenting the petition to the judge at the time he did so; and, as it is not shown that it was presented to the judge during the existence of the old district, it was not necessary for contestees to show that the signers intended it as a petition for an election in the new district. If presented after the creation of the new district by a person cognizant of the facts, the judge could assume that such person was authorized by the other signers to so present it. We conclude that we cannot sustain the second contention urged by appellees as a ground for sustaining the judgment of the court.

Appellees' contention that the court should have made an express finding that a necessity existed for changing district No. 31 is without merit.

[4] The eighth assignment is overruled, because the bill of exceptions fails to show what the witnesses would have testified.

The burden of showing the invalidity of the election rested upon contestants. This burden has not been discharged, and a verdict should have been instructed in favor of the contestees. The first seven assignments of error are sustained, the judgment is reversed, and judgment here rendered in favor of appellants.

Reversed and rendered.

### On Motion for Rehearing.

Appellees contend that the nunc pro tunc order was only admitted in evidence for the purpose of showing the date of its passage, and that it cannot be given any probative value as against them because entered after this suit was filed and without notice to them. The statement of facts shows the introduction of this order by appellees, and we find no statement that it was admitted only for the purpose of showing the date of its entry. Appellees are in error in saying it was not offered in evidence by appellants, for the statement of facts contains the following statement just before the conclusion of Hartman's testimony: "The order nunc pro tunc was here admitted." No objection appears to have been made to its admission, but even without such order, we think the evidence establishes the fact that the court adopted the Stein field notes as those of district No. 31. The fact that they were formally adopted as the field notes of said district was probably sufficiently shown by their appearance upon the minutes, which we must presume were read over and found correct and signed as required by law. But if anything more is needed than such entry, Hartman's testimony establishes the fact that Stein's report was adopted by the court; in other words that the field notes appear upon the minutes pursuant to their formal adoption by the court.\ This is equivalent to saying that the court passed an order adopting the field notes as the boundaries of district No. 31. Appellees contend that the first order entered by the court was one to have a survey made, and not to redistrict, and that such order cannot be varied or contradicted by Hartman's testimony to the effect that he made the motion, and that it was really a motion to

enlarge the district and have it surveyed. They also contend that the motion as described by Hartman was too indefinite to base an election upon. The first order is not important in view of the fact that after the survey was made the court adopted the field notes as those of district No. 31. Such act established the district according to the field notes, regardless of all previous orders, and regardless of whether other districts were properly described or not.

The motion for rehearing is overruled.