## SOVEREIGN CAMP, W. O. W., v. JAMES.
### (No. 6195.)

(Court of Civil Appeals of Texas. Austin. March 30, 1921. Rehearing Denied May 11, 1921.)

1. **Insurance ☞748 — Fraternal society's by-law construed to give member 30 days in which to give notice of change of occupation, without suspension.**

Under fraternal organization's by-law providing: "If a member engages in any of the occupations or businesses mentioned in this section, he shall within 30 days notify the clerk of his camp of such change of occupation. * * * Any such member failing to notify the clerk * * * shall stand suspended"—a member who dies within 30 days after the change without having given the notice is in good standing at the time of his death; the suspension not taking effect until after the expiration of the 30-day period.

2. **Insurance ☞739 — Additional dues payable on change of occupation held payable when regular rate became due.**

Under fraternal society's by-law requiring a member who changes his occupation to one of specified occupations or businesses to "pay on each monthly installment or assessment 30 cents for each $1,000 of his beneficiary certificate, in addition to the regular rate," the additional 30 cents did not become due at the time of the change, but at the time that the regular rate became due.

3. **Insurance ☞815(2) — Insurer's answer pleading insured's change of occupation without notice must allege expiration of period within which notice was required to have been given.**

In action on death benefit certificate issued by a society with a by-law requiring notice of change of occupation within 30 days after change, answer alleging that the deceased changed his occupation without giving the society notice thereof, and that he died while engaged in the new occupation, without alleging that deceased died more than 30 days after the change of occupation, *held* insufficient to present a defense, since, in absence of allegation as to expiration of the 30-day period, it did not appear that the member stood suspended at the time of his death.

4. **Insurance ☞815(2)—Insurer's answer alleging change of occupation without payment of additional assessment held insufficient pleading of suspension.**

In action on certificate of fraternal society with by-law requiring additional assessment of member who has changed to a more hazardous occupation, alleging that the deceased member changed occupation and died while engaged in new occupation without payment of increased rate, without alleging that the regular rate had become due prior to the member's death, *held* insufficient to show that the member had been suspended at the time of his death, since the additional rate had not become due until the regular rate had become due.

5. **Insurance ☞815(2) — Burden of alleging and proving facts showing suspension at time of death on fraternal society.**

Where fraternal society by-law required the member on change to a more hazardous occupation to give the society notice of the change and to pay an additional rate of assessment, the beneficiary, in action on the death benefit certificate following the member's death in the more hazardous occupation without notice of change or payment of additional assessment, was not required to allege and prove that the member died during the 30 days following the change and before a regular assessment fell due, the society having the burden of alleging and proving that the member died subsequent to the expiration of such 30-day period, and after the regular assessment had become due, in order to defend on the ground that the member was suspended at the time of his death.

6. **Trial ☞68(1)—Refusal to reopen case to admit evidence outside pleading not error.**

Refusal to permit defendant after he had closed his testimony to introduce testimony

as to certain facts, on plaintiff's motion for a directed verdict on the ground that there was absence of proof as to such facts, *held* not error where *testimony as to such facts was not* admissible under the pleadings.

Appeal from District Court, Mills County; F. M. Spann, Judge.

Action by Mrs. M. E. James against the Sovereign Camp, Woodmen of the World. Judgment for plaintiff, and defendant appeals. Affirmed.

Kirby, King & Keeble, of Abilene (Cunningham & Oliver, of Abilene, on the brief), for appellant.

Callaway & Callaway, of Comanche, and J. C. Darroch, of Goldthwaite, for appellee.

WILKINSON, Special Judge. Appellee's action is based upon a certificate of insurance for $2,000, issued by appellant about November 12, 1900, to Pat Henry James, and payable at his death to appellee, his wife. It stipulates also for the payment of an additional sum of $100 for the erection of a monument at the grave of the insured, for which judgment was also asked. The jury returned an instructed verdict for $2,100. The certificate was made a part of the petition, and introduced by plaintiff in evidence. It contains the following provision:

"This certificate is issued and accepted subject to all of the conditions on the back hereof, and subject to all of the laws, rules, and regulations of this fraternity now in force, or that may hereafter be enacted, and shall be null and void, if said sovereign does not comply with all of said conditions, and with all the laws, rules and regulations of the Sovereign Camp of the Woodmen of the World that are now in force, or which may hereafter be enacted. * * * *"

Among the conditions on its back are the following:

"(1) This certificate is issued in consideration of the representations and agreements made by the person named herein, in his application to become a member, and in consideration of the payment made when introduced in prescribed form; also his agreement to pay all assessments and dues that may be levied during the time he shall remain a member of the order.

"(2) If the admission fees, dues, and beneficiary fund assessments levied against the person named in this certificate are not paid to the clerk of his camp, as required by the constitution and laws of the order, this certificate shall be null and void, and continue so until payment is made in accordance therewith.

"(3) The foregoing provisions are hereby made a part of the consideration for, and are conditions precedent to, the payment of benefits under this certificate."

The by-laws of appellant, effective at the time of the issuance of said certificate, contain the following provisions pertinent to the issues in this case:

"Sec. 44. Persons engaged in the following occupations, to wit: * * * Miners (except coal miners)—may be admitted to membership, if accepted by a sovereign physician; but their certificates shall not exceed $2,000.00 each, and their rate of assessment shall be thirty cents per thousand in addition to the regular rate, while so engaged in such hazardous occupation. * * *

"Sec. 58. The noncompliance with any of the several conditions precedent named in these laws shall be an absolute bar to any claim on the beneficiary fund of the order under and by virtue of any benefit certificate that may have been issued, or that may hereafter be issued to an applicant. * * *

"Sec. 66. * * * If a member engages in any of the occupations or businesses included in section 44 of these laws, he shall, while so engaged, pay the increased rate of assessment provided herein."

The constitution and laws of appellant, effective since October 1, 1917, and at the time of the death of insured, contain the following pertinent provisions:

"Sec. 43. Persons engaged in the following occupations, to wit: (a) * * * Those employed in mines not otherwise prohibited * * *—may be admitted to membership, if accepted by the sovereign physician; but their certificates shall not exceed two thousand dollars each, and their rate of assessment shall be three dollars and sixty cents per annum for each $1,000.00 of their beneficiary certificate, in addition to the regular rate, while so engaged in such hazardous occupation.

"(b) If a member engages in any of the occupations or businesses mentioned in this section he shall within thirty days notify the clerk of his camp of such change of occupation, and while so engaged in such occupation shall pay on each monthly installment or assessment thirty cents for each one thousand dollars of his beneficiary certificate, in addition to the regular rate. Any such member failing to notify the clerk, and make such payments above provided, shall stand suspended, and his beneficiary certificate shall be null and void. * * *

"Sec. 68. * * * Each and every benefit certificate is issued only upon the conditions stated in, and subject to, the constitution and laws.

"Sec. 69. * * * (b) The constitution and laws of the Sovereign Camp of the Woodmen of the World now in force, or which may be hereafter enacted, by-laws of the camp now in force, or which may be hereafter enacted, the application and certificate, shall constitute a part of the beneficiary contract between this society and the member, provided the nonpayment of the increased rate referred to by those members entering prohibited or hazardous occupations shall work a suspension of the member the same as if the original amount were not paid, and on the same conditions; and during such suspension his certificate shall be null and void, until he shall reinstate himself in the same manner as if the original assessment had been unpaid, and he was suspended therefor."

Appellant's answer consisted of a general denial, and the allegation that the above-

quoted provisions from its constitution and laws, which were fully set out, constituted a part of the contract of insurance, and also of the following special plea:

"This defendant represents to the court that the said Pat Henry James, the insured in the benefit certificate sued on in this case, at the time of his application for membership in this order by his signed application represented that he was a farmer, which said occupation was not one prohibited by the rules and laws of this defendant, and was an occupation which was not by the laws and rules of this order deemed hazardous; that after the issuance of the benefit certificate to the said insured, Pat Henry James, he changed his occupation from that of a farmer to that of a miner, which said last-named occupation was and is deemed hazardous, without notice or knowledge, and without the consent, of this defendant, and without having notified the clerk of the local camp, and without having paid the increased rate as in such cases made and provided; and that at the time of his death the member was then engaged in mining and pursuing the occupation of a miner, and his said death was brought about by an explosion in the mines where the said Pat Henry James was then and there employed and working, whereby, and by reason of which fact, the benefit certificate sued on was and became null and void and of no force and effect, and this defendant was and is released from all liability thereunder; the member having by the breach of his contract and the entering into the hazardous occupation of a miner, without having paid to this defendant the increased rate of compensation provided for, become suspended, and no reinstatement of the said Pat Henry James having been by him effected prior to his death."

It appears that at the time of the issuance of said certificate, the insured resided in Mills county, Tex., and from that time until his death was a member of Mullin Camp, No. 542, at the town of Mullin, in said county; that he left Mills county in December, 1917, and went to Arizona; that all assessments and dues under said certificate were by its terms payable on the 1st of each month, and that at the time of insured's death all of said assessments or dues, except such increase in same as may have accrued by reason of insured's change of employment to a more hazardous occupation, had been paid to the clerk of said camp, the last payment having been made by appellee on May 1, 1918.

It also conclusively appears that at the time of insured's application for membership, and the issuance of said certificate, he was a farmer; that he lost his life on May 2, 1918, in Arizona, from an explosion in a mine, while he was employed and engaged in mining; that no notice was ever received by appellant from him, or from any other source, of his said change of occupation; and that after such change no increase of payment was made by him, or by any one for him, of his monthly installments or assess-

ments, as provided by appellant's constitution and laws.

[1, 2] Construing section 43, subd. (b), of appellant's constitution and laws, above quoted, we hold that the insured had 30 days after his change of occupation, if there was a change, within which to notify the clerk of his camp of such change, and that his certificate would not become null and void by reason of his failure to give such notice until that period had elapsed. We also hold that the 30-cent increase in rate accruing because of such change became due and payable at the same time as the regular rate. It follows that, if the insured's death ensued before the expiration of the 30 days, and without default in the payment of said increase in rate, he left his certificate of insurance in full force, whether he had given notice of his change of occupation or not.

[3] As already stated, appellant pleaded the provision of its constitution and laws last referred to; but, as seen, its further pleading as to change of occupation, and notice thereof covered by said provision, shows merely that the insured at the time of his death was engaged in his new and more hazardous occupation, and had not given the required notice of that fact. It does not show when he became or how long he had been so engaged. The answer consequently presented no defense on this phase of the case, as it did not appear therefrom that 30 days had intervened between the date of insured's change of occupation and that of his death; in other words, it does not appear from the answer that the time allowed the insured for giving such notice had expired at the time of his death.

[4] We also think the answer presents no defense in its attempt to show that the certificate had lapsed at the time of the insured's death from failure to pay the increased rate required by reason of his change of occupation. The allegation is merely that the insured "changed his occupation from that of a farmer to that of a miner * * * without having paid the increased rate as in such cases made and provided." This could be true, and yet immaterial, as no part of said increased rate may have been due at the time of his death. As we have said, the certificate shows that all assessments and dues matured on the 1st day of each month. The petition states that the insured lost his life on May 2, 1917. It is not alleged that the change of occupation took place before or on May 1st, and that the insured was on that date in arrears in the payment of any increased rate due to the change. We cannot assume that such was the case. The change may have been made on the very day of insured's death, for ought that appears, in which event the increased rate could not become due till June 1st. Furthermore, the language last quoted from defendant's an-

swer is subject to the construction that, in the view of the pleader, the insured was required to pay the increased rate before or ,at the time of making · the change referred to, whereas it would be due, as we have seen, when the next regular rate was due. Indeed, this construction is the more justified by the further statement that the "member having by the breach of his contract and the entering into the hazardous occupation of a miner, without having paid to this defendant the increased rate provided for, become suspended." This language, being, to say the least, equivocal, should be construed against the pleader. Barry v. Screwman's Association, 67 Tex. 250, 3 S. W. 261. Therefore, as the change of occupation may have occurred on May 2d, and as defendant's answer charges a failure to pay the increased rate as a condition precedent to the right to make such change, and not because it was otherwise due, there is, in our opinion, nothing in the pleading to show default in the payment of said increased rate. For the reasons stated, we think the answer does not set up such facts as would, in connection with the provision of the constitution and laws referred to, work a suspension of the insured's membership, and an avoidance of the certificate,

[5] Under its first assignment of error, appellant presents the following proposition:

"The defendant having shown that the deceased, Pat Henry James, changed his occupation from that of a farmer to that of a miner (which latter occupation is classed under the contract of insurance as hazardous), without reporting such change to the clerk of his camp, and without paying the increased rate of dues and assessments provided in such cases, which rendered the contract void, and that the insured came to his death while engaged in said hazardous occupation by an explosion in the mine in which he was working, the defendant made such a prima facie case of nonliability on its part as to place the burden on plaintiff of showing that deceased did not come within the exception mentioned; and, not having met this burden in any manner, she cannot recover."

The case of Travelers' Insurance Co. v. Harris (Com. App.) 212 S. W. 933, is cited in support of the proposition. The principle announced in that case, and in those that it follows is that, where a policy of insurance is general in its terms, but stipulates for nonliability for loss or injury due to specified causes, it is necessary, in a suit based upon it, that the pleading and proof show that the loss or injury did not arise from any of said causes, or, what is the same thing, that it resulted from a cause other than any of those so excepted. We are unable to see that this principle has any application here. In this case, as we read the contract of insurance, the occupation of a miner was one of the risks expressly assumed by appellant. It is true that it goes further, and, as we

have seen, provides, in case of a change from an occupation under which one is admitted to the order to a more hazardous one, for the giving of the notice, and the payment of the increased rate, mentioned in the proposition, and also that default in either of these particulars shall nullify the certificate. But, in our opinion, such a state of facts does not create the exception appellant contends for. It is rather in the nature of a condition subsequent. To illustrate, in a suit upon such a contract, defense could not be made under the general issue, because the contract would establish the fact that plaintiff's case came within one of the perils insured against. The defendant would be compelled to confess and avoid. Smothers v. Field, Thayer & Co., 65 Tex. 435; World's Special Films Corporation v. Fichtenberg, 176 S. W. 733. Such being the situation, the facts urged by appellant as constituting an exception were purely defensive matter, which plaintiff was not bound to allege, or consequently to prove.

[6] Appellant complains of the action of the court in refusing to permit him to introduce the testimony of one O. V. Lawson. It appears from the bill of exception that after the evidence for both sides had been concluded, and counsel for appellee was addressing the court on the law of the case, he adverted to the fact that there was an absence of proof as to how long the insured had been · engaged in mining at the time of his death, and insisted that for this reason appellee was entitled to an instructed verdict in her favor; that thereupon counsel for appellant asked leave to withdraw his announcement that he had closed his testimony, and offered to prove by said witness, who would have so testified, "that he, the witness, was in Arizona with the deceased, Pat H. James, and knew him all the time, and that Pat H. James was engaged in mining for about five months prior to the date of his death"; that the court, upon objection, refused to permit the case to be reopened and said testimony to be introduced.

In view of what we have already said, it is not necessary for us to decide whether or not the court, under the circumstances (all of which are not here stated), abused his discretion in the action taken. The appellant did not ask leave to amend its answer, which, in its present state, did not, as we have already seen, afford a basis for the defense that the proposed testimony was intended to support.

The judgment of the trial court is accordingly affirmed.

Affirmed.

JENKINS and BRADY, JJ., being disqualified, did not sit in this case.

BLACK, Special Judge. I concur in the view of Judge WILKINSON that the plead-

ing of the appellant was not sufficient to present the defense that the insured changed his occupation from that of farming to mining, and thereafter failed, within 30 days, to give the notice required and pay the increased assessment. I therefore concur in the affirmance of the judgment. I prefer, however, to base my concurrence upon the additional ground that, in my opinion, the evidence fails to raise the issue that deceased had changed his occupation from farming to that of mining, and had breached the provision of the by-laws relied upon. The evidence relating to this defense, in my opinion, does not go as far as the pleading, and, the pleading being insufficient, it is even more clear that the evidence is insufficient.

The agreement of the parties, introduced in evidence, shows that the deceased, Pat H. James, was a farmer at the time he applied for the benefit certificate sued on and at the time the same was issued and delivered to him, and then shows merely "that, subsequent to the issuance and delivery of the benefit certificate sued on in this case, the insured was engaged in mining, and that the death of the insured was caused by an explosion occurring in a mine where he was then employed." This agreement of the parties just quoted constitutes the only evidence in the record showing or tending to show any change of occupation from that of farming to that of mining. This shows, in my opinion, simply that, at some undefined time subsequent to the delivery of the benefit certificate, the insured was "engaged in mining," and that he was employed in a mine at the time of his death. The section of the by-laws of the appellant quoted in the opinion of Judge WILKINSON provides that, if a member change his occupation to that of mining, he should, within 30 days, notify the clerk of his camp "of such change of occupation," and that while engaged in the new occupation he should pay an additional assessment of 30 cents for each $1,000 of the amount of his certificate. The evidence embodied in the above agreement does not raise the issue that the deceased had changed his occupation.

The word "occupation" has reference to the principal or regular business of a man's life, that to which he devotes his time and attention, such as a trade, profession, or other vocation or calling. This being true, the agreement introduced into evidence simply showing that the deceased, who was a farmer when he joined the order, thereafter, for a length of time not stated, "engaged in mining," and that he was employed in a mine when he was killed, does not show that he had changed his occupation—the principal business or work of his life—from that of farming to mining. It is not the act of mining, but the occupation of mining, that is made the basis for the increased rate of assessment. That the insured at some time "engaged in mining" does not alone show a change of occupation. A man having a definite occupation may engage in many other activities, and yet not to such a degree or for such a length of time as would constitute a change of occupation. An insurance policy excepting given occupations or requiring increased rates for such occupations deemed hazardous must be construed differently from those policies which except single acts from the scope of the insurance. See Joyce on Insurance (2d Ed.) §§ 2236 and 2870.

The provision of the by-laws allowing 30 days to give notice of "change of occupation" recognizes that a change of occupation is not effected by mere temporary changes in the principal work in which the member may be engaged. The by-laws did not prohibit mining or "engaging in mining," but simply provided that one who changes his occupation to that of mining must give notice of such change of occupation within 30 days, and thereafter pay the increased rate mentioned, or suffer that penalty visited upon members for nonpayment of valid assessments made against them. Under this provision, a man might be engaged in mining for 29 days, and yet not be required to give the notice that he had changed his occupation, and not be required to pay the increased assessment, because, under this by-law, the fact that a man might be "engaged in mining" for even 29 days would not show a change of occupation, and would not support the forfeiture relied upon. The agreement introduced into evidence shows simply that the deceased was "engaged in mining" at some time not stated and for a length of time not stated after he joined the order. Whether he was thus engaged 1 day, 10 days, or 30 days is not stated. In order to show a forfeiture under the provision of the by-laws relied upon, it was essential for the defendant to show not simply that the deceased was "engaged in mining," but how long he had been so engaged, because the act of engaging in mining was not prohibited and does not furnish the basis for the forfeiture relied upon, that forfeiture arising only because of failure to give notice within 30 days of a change of occupation and thereafter pay the increased assessment applicable thereto.

Such being the state of the evidence, I am of the opinion that, if it be conceded that the pleading sufficiently presented this provision of the by-laws and its breach as a defense, still that the evidence embodied in this agreement—and that is all there is in the record —did not raise an issue of fact to be submitted to the jury. The evidence did not show how long the deceased was engaged in mining, and, this being true, there was no evidence upon which a jury could properly base a finding that the deceased had been "engaged in mining" for 30 days or more.

Such a finding would have involved mere conjecture and speculation on the part of the jury.

The rule as to the burden of proof declared and applied in Insurance Co. v. Co-operative Association, 77 Tex. 225, 13 S. W. 980, and Travelers' Insurance Co. v. Harris (Com. App.) 212 S. W. 933, has no application to the question involved in this case. In the cases referred to certain risks were excepted from the general scope and protection of the policy, and it was held that the plaintiff, having the burden of proof to show that the loss complained of was covered by the policy, and an issue arising as to whether the loss was due to the excepted risk, had the burden of proof on this issue. Under the certificate involved here, persons following the occupation of mining were insured, as well as those who, when they were insured, were following some other occupation and later changed their occupation to that of mining. The forfeiture provided for, and upon which the defendant relies, is not based upon the change of occupation, but rather on the failure to pay the increased assessment applicable to the new occupation. The parties agreed that the insured was a farmer when he was insured; that he had paid all dues and assessments applicable to the occupation of farming. The courts hold, I think without exception, that the burden rests on the society to show what assessments have been made against the insured, and that they have been properly made and became due and were not paid, and a forfeiture resulted. The certificate does not, on its face, provide for any definite monthly or yearly assessment or premium. It simply requires a member to pay whatever the society assesses, and the burden rests on the society to show that assessments have been made against the member, that his liability to pay same accrued, that he failed to pay the same, and a forfeiture resulted. See Joyce on Insurance, § 1310, and Haywood v. Grand Lodge, etc., 138 S. W. 1194.

In my opinion, the bill of exceptions complaining of the refusal of the trial court to reopen the case and permit the defendant to offer the testimony of the witness Lawson shows no reversible error. The parties had entered into an agreement as to the facts covering this phase of the case. Both the parties rested, and the testimony of this witness had not been offered. The lengthy qualification attached to the bill suggests that a reopening of the case on this issue would have necessitated considerable delay in permitting the plaintiff to secure witnesses in rebuttal of the testimony of Lawson. I am of opinion that this bill, as a whole, fails to show an improper exercise of the discretion committed to the trial court with respect to such a matter.